2117

Kay Hilton HOUGH, Respondent v. Robert Lester HOUGH, Jr., and June Hough, Defendants, of whom Robert Lester Hough, Jr., is Primary Appellant and June Hough is Secondary Appellant.

(440 S.E. (2d) 387)

Court of Appeals

*Michael L. Brown, Jr.; William H. Godbold, III; Charles M. Blackwell;* and *Charles H. Chiles,* Rock Hill, *for appellants.*

*Peter M. Perrill* and *Thomas F. McDow,* Rock Hill, *for respondent.*

Heard Dec. 9, 1993.

Decided Jan. 17, 1994.

SHAW, Judge

The wife, Kay Hilton Hough, brought an action for divorce, and the husband, Robert Lester Hough, Jr., counterclaimed for divorce on the grounds of adultery. From the court's order of divorce, the husband appeals the award of attorney's fees, as well as the valuation, distribution and division of the marital estate. The husband's mother, June Hough, appeals the court's determination that the marital home titled in her name was marital property. We affirm as modified.

The husband and wife were married in 1984, and had two children, Robert Lester Hough, III, born December 17, 1984, and John Tyler Hough, born June 30, 1988. The wife has experienced extreme emotional and psychological difficulties requiring hospitalization at times, and admitted having an extramarital affair.

The trial court granted the husband a divorce on the ground of adultery, awarded custody of the children to the husband's mother, with visitation to the wife, awarded the wife 40% of the marital estate, and the husband 60%, and awarded the wife attorneys' fees.

The trial judge concluded the marital home, although titled in the name of the husband's mother, was actually marital property. He awarded the marital business, a Nissan automobile, the marital home, and the husband's jewelry to the husband. He awarded a Cadillac automobile and the wife's jewelry to the wife. He placed no value on the husband's or wife's jewelry nor on the household goods, but ordered the "unappraised assets shall be appraised within 10 days of the Decree and if the parties have not resolved the distribution of these assets within 30 days, this Court will." He further ordered the

husband to make up the difference in cash within 30 days to effectuate a 40% award for the wife. Two months later in a subsequent order, the trial judge valued the wife's jewelry in the husband's possession at $7,040 and a doll collection at $8,139. He ordered the husband to return the wife's jewelry in his possession or to pay its value to the wife, but awarded the husband the doll collection. Because the values and distribution of the household goods were still unresolved, the trial judge ordered them sold at public auction with 60% of the proceeds going to the husband and 40% to the wife.

## I.

On appeal, the Husband argues the court erred in awarding attorneys' fees, essentially because the wife did not obtain beneficial results. We disagree.

The trial court made extensive findings on this issue and determined the fees requested were reasonable, the wife could not afford to pay her fees, the wife obtained beneficial results on equitable apportionment issues and visitation, and she did not contest issues upon which she was not entitled to relief. The court considered the appropriate factors, and we see no abuse of discretion. *See Glasscock v. Glasscock*, 304 S.C. 158, 403 S.E. (2d) 313 (1991),[1] *see also Stevenson v. Stevenson*, 295 S.C. 412, 368 S.E. (2d) 901 (1988) (attorney fees are in the sound discretion of the family court and will not be disturbed absent abuse of discretion).

## II.

The husband next argues the court erred in its distribution of the marital estate. He claims the court should have attempted an "in kind" distribution of the assets instead of awarding the husband virtually all of the property and ordering him to pay the wife her share in cash. The trial court should effectuate an "in kind" distribution of marital property where possible. *Donahue v. Donahue*, 299 S.C. 353, 384 S.E. (2d) 741 (1989). However, under the circumstances of

---

[1] The factors consist of: 1) the nature, extent, and difficulty of the legal services rendered; 2) the time and labor devoted to the case; 3) the professional standing of counsel; 4) the contingency of compensation; 5) the fee customarily charged in the locality for similar services; and 6) the beneficial results obtained.

this case in which the marital home is situated across from the husband's parents' home, and the jewelry business is operated by the husband,[2] we see no abuse of discretion in the court's decision not to effectuate an "in kind" distribution of the major marital assets. *See Morris v. Morris*, 295 S.C. 37, 367 S.E. (2d) 24 (1988) (equitable distribution of marital property is within the discretion of the trial court).

## III.

The husband also argues the court erred in its valuation and distribution of the marital estate. Specifically, he contends the court failed to value and distribute the wife's jewelry, his jewelry, and the household goods. We note that the court did value the wife's jewelry in the husband's possession, ordering the husband to return the wife's jewelry or pay her $7,040. In doing so, he clearly accepted the valuation of this personal property as submitted by the wife. This valuation was part of a total valuation of the wife's jewelry, including that which she had in her possession. The remainder of the wife's jewelry in her possession was valued at $2,875 and we therefore accept this figure for purposes of determining equitable distribution there being no valuation to the contrary submitted by the husband. As to the husband's jewelry, the record also reflects the wife submitted a similar list of his jewelry and valuations. The husband offered no valuations to the contrary and disputed only whether 5 of the items were marital property. Excluding the 5 items from the list, we find the value of this property to be $8,075. Finally, as to the household goods, the husband offered no evidence on the existence or value of this property and refused to state his position when questioned on the same. It was within the trial judge's discretion to order the property sold and a 60%/40% split effectuated. The husband having failed to present any evidence on the issue should not now complain. *See Honea v. Honea*, 292 S.C. 456, 357 S.E. (2d) 191 (Ct. App. 1987) (the burden is on appellant to show the family court committed reversible error and a party cannot sit back at trial without offering proof, then come to the appellate court complaining of the insufficiency of evidence to support the family court's findings). Accordingly, we

---

[2] The husband testified he wanted to continue running the business.

affirm the order concerning the household goods and modify the order to reflect the above values for the jewelry.

## IV.

June Hough, as secondary appellant, appeals the court's finding that the marital home, titled in her name, was actually marital property. We affirm the trial court's finding.

True ownership of the house was greatly contested, although June Hough is the owner of record. The parties testified as follows.

### Wife

The wife testified the husband bought the lot on which the house was built for $3,500 and put it in his mother's name. She testified the husband then gave his mother cash to build the house because he was not working at the time and could not put the house in his name without arousing the IRS.

The wife testified her mother-in-law handled the building of the house, and the husband periodically gave his mother cash payments to cover costs. Specifically, the wife recalled seeing the husband give her approximately $10,000 in cash. She explained further that her husband dealt almost exclusively in cash. She said he earned much of his money from booking ball games, and that she kept the books for him.

The wife claimed she knew nothing about construction or decoration, and that she left much of the decision making to her mother-in-law. But the wife said she helped pick out wallpaper, and paid her brother-in-law to install wrought iron rails around the front porch.

### Husband

The husband denied having anything to do with the construction of the house save for recommending his mother install a large bathtub in one of the bathrooms. He claimed his mother picked out the carpet, painted and wallpapered, refinished the cabinets, and made the drapes. The husband denied giving his mother any money to build the house.

The house has required no upkeep. The husband did not recall who paid the taxes, but admitted taking out a homeowner's policy on the house. He has not paid his mother any rent.

The husband admitted gambling two to four evenings a week, but asserted his Fifth Amendment right against self-incrimination when asked if he ever booked a ball game. He admitted he and his wife would take trips to Las Vegas or Atlantic City, carrying a total of as much as $20,000 in cash.

The husband reported no income to the IRS for the years 1984, 1985 and 1986.

### Husband's Mother

June Hough testified that she bought the lot the house was built on for $3,364.84, and presented documents relating to the transaction. She claimed she paid all construction costs, totaling approximately $40,000, and that the husband and wife in no way contributed to the construction.

She testified she paid the taxes on the house. She said she agreed to let the husband and wife move into the house, although she initially intended to build it as an investment.

She described financially assisting the husband throughout his adult life. She testified that, before the house was built, when the husband and wife first got married, she allowed them to live in a trailer on property she owned, and that she paid for a number of repairs to the trailer. She produced a cancelled check for the birth of the couple's first child. She produced other canceled checks for payments she made to install carpet in the trailer, and for furniture she bought to put in the trailer. She also produced canceled checks for other payments she made for the husband and wife after their separation.

In contrast to these specific records, however, the husband's mother had no records for the construction costs relating to the building of the house. She also had no record of how she paid for the lot. When asked about the wife's testimony that the husband provided the money for the construction of the house, she responded, "Kay never saw Buddy give me that."

### Accountant

Walter Carpenter, an accountant, testified as an expert witness for the wife. Carpenter reviewed the 1984, 1985, and 1986 tax returns of the husband's parents, which he concluded did not reflect expenditures consistent with the construction costs of the house. Carpenter also testified that, for income tax pur-

poses, one is required to keep records of the costs of building a house of of rental income.

*Contractor*

Fred Clark,[3] a professional contractor, testified that he helped June Hough construct the home. He testified that she paid him, and that he was doing this work for her, and not the husband and wife. In building the house, Clark was paid mostly in cash. He did not maintain records of the construction, but estimated the final cost was approximately $35,000 or $40,000.

The court found the home belonged to the husband and wife, and that the husband had paid his mother cash which she in turn used to pay for the lot and for construction costs. The court disbelieved the husband's mother, noting she had detailed records of other bills and none relating to the house. The court found further that the husband's parents did not have sufficient disposable income to build the house. In support of the wife's testimony, the court noted the husband and wife purchased homeowners insurance as opposed to renter's insurance, and that the husband admitted being a professional gambler and reported no income during 1984, 1985 and 1986.

On appeal, June Hough argues the wife failed to establish the house was marital property. We disagree.

We reject the argument that the trial court's order effectively found a resulting trust in favor of the husband and wife. The authority for the family court's determination that the house was marital property lies in the South Carolina Equitable Apportionment of Marital Property Act. S.C. Code §§ 20-7-471 through 479 (Supp. 1992).

> Section 20-7-473 defines marital property as "all real and personal property which has been acquired by the parties during the marriage and which is owned as of the date of filing or commencement of marital litigation ... *regardless of how legal title is held* ..." (emphasis added). This section specifically provides for the possibility of marital property could be titled in a third party.

*Sexton v. Sexton*, 298 S.C. 359, 380 S.E. (2d) 832 (1989).

---

[3] Fred Clark also rents the jewelry store site to the husband.

In *Sexton*, the Supreme Court affirmed the trial court's determination that it had jurisdiction to determine whether the marital residence was marital property, even though the husband's parents had title. 298 S.C. 359, 380 S.E. (2d) 822.

In reviewing the family court's determination that the house was marital property, this Court may take its own view of the preponderance of the evidence. *Campbell v. Campbell*, 300 S.C. 68, 386 S.E. (2d) 305 (Ct. App. 1989). We need not, however, disregard the findings of the trial court. *Id.*

Under the circumstances of this case, where the parties apparently dealt almost exclusively in cash, the trial court had to make its determination based on the credibility of the parties. Particularly where evidence is disputed, we normally adhere to findings of the trial judge who saw and heard the witnesses and was in a superior position to judge their credibility. *Klutts Resort Realty, Inc. v. Down'Round Dev. Corp.*, 268 S.C. 80, 232 S.E. (2d) 20 (1977).

The wife testified the husband paid for the house through his mother and in cash to avoid the attention of the IRS. Other evidence supports her testimony. The husband admitted that he gambled and dealt in cash. The husband reported no earnings during that time period. The husband and wife maintained homeowner's insurance on the house, referred to the house as their own, and paid no rent. Furthermore, according to expert testimony, in 1985 the husband's parents could not have paid from their reported earnings or savings construction costs for the house.

We also agree with the trial court that June Hough's testimony was incredible. She claimed to have built the house with cash she had on hand in her safety deposit box, and could produce no records relating to the construction of the house. She could, however, produce earlier records showing to the penny amounts expended in refurbishing a trailer for the husband and wife.

Upon a review of the entire record, we find the wife established a preponderance of the evidence that the marital home was indeed marital property.

Affirmed as modified.

BELL and CONNOR, JJ., concur.