## 2542

Clarence M. ELLERBE, Jr., Appellant v.
Lawanne F. ELLERBE, Respondent.

(473 S.E. (2d) 881)

Court of Appeals

*Brooks P. Goldsmith,* Lancaster, *for appellant.*

*Forrest C. Wilkerson,* Rock Hill, *for respondent.*

Heard May 9, 1996.

Decided July 15, 1996; Reh. Den. Aug. 22, 1996.

CURETON, Judge:

In this divorce case, the family court granted Lawanne F. Ellerbe (wife) a divorce on the ground of adultery, equitably divided the marital property, and awarded her alimony, investigator fees, expert witness fees, and attorney fees and costs. Clarence M. Ellerbe, Jr. (husband) appeals. We affirm in part, reverse in part and remand.

### FACTS AND PROCEDURAL HISTORY

The parties were married in 1968 and have one emancipated child. They separated on February 20, 1994. At the commencement of this action, the husband was 50 years old and the wife was 45. The wife is a college graduate and is currently seeking a degree in nursing, which she anticipates receiving in December 1997 or May 1998. She is employed as a systems administrator at the Sanger Clinic in North Carolina where she has worked for seventeen years. During the marriage, the wife was the primary homemaker and caretaker for the parties' child. The husband is a college graduate and is employed with Davis, Young, Speir & Lee, an insurance agency in Charlotte, North Carolina. Prior to the parties' separation, the husband suffered a brain aneurysm which required surgery. The husband resumed full-time employment several months later.

On March 21, 1994, the husband sued for separate maintenance and requested an equitable division of the parties' marital assets. In an Amended Answer and Counterclaim, dated September 13, 1994, the wife sought a divorce on the ground of adultery, alimony, attorney fees, litigation expenses and costs. The husband replied, generally denying the wife's allegations, but admitting he had committed adultery. In a pendente lite order dated September 30, 1994, the court ordered the husband to pay alimony in the amount of $1,200 per month. Pursuant to an order dated December 24, 1994 and a supplemental order dated March 3, 1995, the wife was granted a divorce on the ground of adultery. The court equitably distributed the parties' marital assets and debts, awarded the wife $1,300 per month permanent alimony and $200 per month temporary alimony until she completed her nursing training, and awarded the wife attorney fees, costs, and other litigation expenses.

## STANDARD OF REVIEW

In appeals from the family court, this court has jurisdiction to find the facts in accordance with our own view of the preponderance of the evidence. *Hough v. Hough*, 312 S.C. 344, 440 S.E. (2d) 387 (Ct. App. 1994). This broad scope of review, however, does not require us to disregard the findings of the family court. *Stevenson v. Stevenson*, 276 S.C. 475, 279 S.E. (2d) 616 (1981). Neither are we required to ignore the fact that the trial judge, who saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimonies. *Cherry v. Thomasson*, 276 S.C. 524, 280 S.E. (2d) 541 (1981).

## DISCUSSION AND ANALYSIS

### I.

The husband asserts the family court's finding that his relationship with Debbie Drawdy contributed significantly to the breakup of the parties' marriage is contrary to the preponderance of the evidence.

In his reply to the wife's Amended Answer and Counterclaim, the husband admitted the wife was entitled to a divorce on the ground of adultery. The husband testified he has known Ms. Drawdy since she began working for him in 1990. He admitted having sexual relations with her in April 1994, approximately six weeks after he and the wife separated, but maintained his relationship with Ms. drawdy did not contribute to the parties' separation. He stated the parties had not had an intimate relationship since 1985, and in fact, the parties had discussed separation on several occasions since 1985.

The report of the wife's private investigator indicates the husband and Ms. Drawdy were alone at the husband's home for several hours on the evening of March 24, 1994 and again at Ms. Drawdy's apartment on March 28, 1994. The husband denied adultery with Ms. Drawdy prior to April 1994; however, he testified she separated from her husband in January 1994, and her husband was awarded a divorce based on their adulterous relationship.

The wife testified the separation was her husband's idea. She further stated she did not want the divorce, but thought it best at the time of trial. She stated "things ha[d] not been

wonderful between us on and off for years, and it was one of those things."

The trial judge found the husband's romantic interest ■ in Ms. Drawdy and excessive drinking contributed significantly to the breakup of the parties' marital relationship. Our review of the record does not disclose sufficient evidence to support the court's finding that the husband's relationship with Ms. Drawdy significantly contributed to the breakdown of the parties' marriage. We note, however, the court also found the husband's excessive drinking, which he admitted, was a contributing cause of the breakup. Therefore, even if the judge erred in his finding concerning the husband's relationship with Ms. Drawdy, we find there is insufficient evidence of prejudice to the husband as a consequence of the ruling. The judge found neither party was guilty of any marital misconduct or fault that substantially affected the economic circumstances of the parties. There is also no indication the court utilized fault as a basis for awarding alimony to the wife. *See Cartee v. Cartee*, 295 S.C. 103, 366 S.E. (2d) 269 (Ct. App. 1988) (appellant bears the burden of showing both error and prejudice).

## II.

The husband next complains the family court erred in ■ discounting the value of the parties' retirement plans, the error being that such a discount is not appropriate because the retirement plans were not required to be liquidated and, thus, taxes were not incurred. We agree.

Both the husband and the wife owned retirement plans. The wife offered the expert testimony of a certified public accountant (CPA) who computed the current value of her retirement plan, deducting from the face value federal and state income taxes, as well as an early withdrawal penalty of 10%. The CPA testified the wife's retirement account, valued at $144,495 as of the date of filing, would have a tax burden of $75,110, which translated into a reduction of approximately 52% of the face value.[1] He also testified the husband's 401K plan, valued at $70,029.88, and his IRA, valued at $4,097.44, should be re-

---

[1] Calculation: $144,495 (face value) - $75,110 (tax burden) = $69,385 (current value) $75,110/$144,495 = .5198 or 52%.

duced by 52% to account for tax burdens. Nevertheless, on cross-examination he testified that these reductions were not necessary if the accounts were not liquidated. He further testified monies in the accounts could be transferred between the husband and the wife without tax consequences pursuant to a Qualified Domestic Relations Order.

Based on the CPA's testimony, the family court found the current values of the parties' tax deferred accounts were equal to 48% of their face values. The family court awarded the wife her retirement plan and ordered her to be responsible for an $8,492 debt secured by a lien against the plan. The family court awarded the husband his 401K plan and IRA, and ordered him to be responsible for a $20,619 debt secured by a lien against the 401K plan.

South Carolina Code Ann. § 20-7-472(11) (Supp. 1995) requires the family court to consider the tax consequences to each party resulting from equitable apportionment. However, if the apportionment order does not contemplate the liquidation or sale of an asset, then it is an abuse of discretion for the court to consider the tax consequences from a supposed sale or liquidation. *See Graham v. Graham*, 301 S.C. 128, 390 S.E. (2d) 469 (Ct. App. 1990); *see also Roe v. Roe*, 311 S.C. 471, 429 S.E. (2d) 830 (Ct. App. 1993). Moreover, a transfer of these funds from one party to the other as a part of an equitable division should not result in a tax consequence. *Josey v. Josey*, 291 S.C. 26, 351 S.E. (2d) 891 (Ct. App. 1986). Here, the parties were awarded their respective accounts. Because we see no need for the accounts to be liquidated, we hold the family court erred in valuing the parties' retirement accounts at 48% of their face values. In redetermining equitable distribution, the family court shall consider the face values of the parties' retirement accounts.

### III.

The husband next asserts the family court erred in awarding the wife a 25% interest in an installment note owed by Kay Insurance, Inc. (Kay) to the Insurance Centre of the Piedmont, Inc. (Insurance Centre). The husband argues the money is not marital property because it is not owed to him personally. He states the proceeds he receives from the note are applied directly to his indebtedness with the Insurance Centre.

The husband and two other individuals own the Insurance Centre, an insurance agency located in Rock Hill, South Carolina. The Insurance Centre previously operated a Charleston branch. On April 1, 1992, the Insurance Centre sold the Charleston operation to Kay. The contract provided that Kay would pay to the Insurance Centre a purchase price of $170,000 at 7% annual interest in 84 monthly installments of $2,567, beginning July 1, 1992.

While the husband testified he has a 37.5% interest in the Kay note receivable, the evidence reflects the note is owned by the Insurance Centre and the Insurance Centre simply allocated to him a portion of the monthly installments to correspond with his percentage ownership of stock in the corporation. The husband also testified that although he is entitled to receive $480 per month from the note payment, he did not actually receive that sum because the money was retained by the Insurance Centre and applied against a debt he owes the Insurance Centre.

At the hearing on the husband's motion to reconsider, the husband's counsel offered into evidence a letter from Hiram Hutchison, the president of the Insurance Centre, dated February 9, 1995, indicating the Insurance Centre contract with Kay had been discounted to the total sum of $75,000. The letter further provided that once the Insurance Centre received the money, the husband's portion of the proceeds would be applied to his indebtedness with the corporation.

The family court found the note receivable to be a marital asset subject to equitable distribution. The family court also found the husband could retain 75% of the income from the note receivable, but required him to pay 25% to the wife by way of equitable distribution retroactive to the date of commencement of this action.

Marital property is defined as all real and personal property acquired by the parties during the marriage and which is owned by them as of the date of commencement of marital litigation, regardless of how legal title is held. *See* S.C. Code Ann. § 20-7-473 (Supp. 1995). The note receivable resulting from the sale of the Charleston agency was payable to the Insurance Centre as a corporation, not to the husband individually. The husband did not own the note receivable, but was only entitled to a 37.5% share of the

monthly payments as a corporate distribution.[2] As such, the receivable was not marital property subject to equitable distribution. We therefore find the family court erred in awarding the wife a 25% interest in the receivable as an equitable distribution award. However, the family court could have properly considered the husband's portion of the receivable as a component of his income. On remand, the note payments are to be considered as income to the husband.

IV.

The husband next assets the family court erred in awarding the wife an interest in a contract with Davis, Young, Speir & Lee, Inc. (Davis). The husband argues that this asset, like the Kay receivable, is not marital property because it is an asset of the Insurance Centre and not his individually. He also argues a major portion of the contract receivable represents payment for a covenant not to compete, a nonmarital asset. The husband further argues the wife should not have been awarded an interest in this contract because the proceeds are based on his future performance, which is speculative at this time.

In a contract dated January 1, 1994 and entitled "Merger Asset Acquisition Agreement and Covenant Not to Compete," the Insurance Centre shareholders, Hiram Hutchison, Clarence M. Ellerbe, and Robert C. Norwood (the sellers), agreed to sell the business of the Insurance Centre to Davis, a North Carolina corporation. The contract provided the sellers would transfer to Davis all insurance records including daily reports, client files, loss histories, and other pertinent documents necessary for Davis to assume ownership of the business, as well as furniture and fixtures. Recognizing the main asset of the business was its client base, the individual sellers agreed to protect that base by signing covenants not to compete. The agreement provided "a substantial portion of the consideration for [the] transaction shall be paid to [individual sellers] as a Covenant Not to Compete." The agreement divided the purchase price as follows: $422,000 for the Insurance Centre assets, and $1,200,000 for the Covenant Not to Compete.

---

[2] The wife has not demonstrated the Insurance Centre's corporate identity should be disregarded.

Pursuant to the agreement, the husband become employed with Davis. The husband testified payments from the sale of the Insurance Centre are made monthly based on the sellers' individual performances. The husband stated the monthly payments are disbursed to the sellers based on their "separate and collective commissions." The husband testified he had been receiving approximately $2,488.50 per month from Davis.

The wife's CPA testified the husband owned the note receivable which entitled him to receive a gross amount of $607,716 over the life of the contract. The CPA also testified the husband is entitled to $37.5% of each payment received from Davis, or $2,593.75 per month for the first year and $3,371.88 per month for the remaining term of the contract. The parties agreed to a discount rate of 15%, which took into consideration factors such as payment delay, decreased payments, and the husband's productivity. Applying the agreed-upon discount rate to the Davis obligation, the CPA testified the entire obligation was valued at $622,380, and the husband's 37.5% interest equaled $233,392.

The family court found the Davis receivable was a marital asset subject to equitable distribution. Recognizing the tax consequences associated with the sale of the Insurance Centre, the family court awarded the wife a 25% tax-free interest in the income from the note by way of equitable distribution. The court allowed the husband to retain 75% of the income from the Davis receivable, but required him to pay 25% to the wife retroactive to the date of filing.

Although we find a portion of the Davis contract receivable to be a marital asset, we conclude the court erred in characterizing the entire receivable as a marital asset. Clearly, a major part of this receivable is a payment for a covenant not to compete. The question of whether a covenant not to compete is subject to equitable distribution is one of first impression in this state. Although we find no definitive majority view, we are persuaded by the reasoning of cases which find that a covenant not to compete is not marital property and, therefore, is not subject to equitable distribution. *Cutsinger v. Cutsinger*, 917 S.W. (2d) 238 (Tenn. Ct. App. 1995) (court excluded monetary amounts for covenant not to compete from purchase price of chiropractic practice); *Hoeft v.*

*Hoeft*, 74 Ohio App. (3d) 809, 600 N.E. (2d) 746 (Ohio Ct. App. 1991) (court determined that while proceeds received for the sale of the husband's dental practice were marital property, monies received from a covenant not to compete were non-marital); *Johnston v. Johnston*, 778 S.W. (2d) 674 (Mo. Ct. App. 1989) (covenant not to compete properly excluded in the valuation of dental practice); *cf. Donahue v. Donahue*, 299 S.C. 353, 384 S.E. (2d) 741 (1989) (goodwill of a professional practice is not subject to equitable distribution).

We remand this issue for the family court to distribute the husband's share of the purchase price of the Insurance Centre assets as marital property. However, the court should exclude from the marital estate the value of the husband's share of the covenant not to compete.

## V.

The husband next asserts the family court erred in failing to recognized the existence of and give credit for specific marital assets and debts.

### A.

The husband claims the family court ignored an account receivable owed to the wife by the parties' emancipated daughter in the approximate amount of $6,000. The wife testified she had advanced their daughter money for medical bills incurred after she was injured in an accident. The wife testified the daughter owed her approximately $6,000 to $6,500, but the money may or may not be repaid. The record shows that at the time of trial, the daughter had collected on her accident claim and had the means to repay the loan. We see no reason this debt should not be counted as a receivable to the wife, and order it to be treated as such on remand.

### B.

The husband alleges the family court erred in finding he owed only $1,951.20 to the Carolina Medical Center. At the hearing on the husband's motion for reconsideration, the family court amended its order to find the correct amount of debt owed to the Carolina Medical Center was $5,762. The wife concedes this is the correct amount. On remand, the husband's debts should reflect this amount.

## C.

The husband next complains the family court erred in disallowing a debt in the amount of $25,310, representing his 1994 income tax liability. The husband testified, without contradiction, he had incurred tax liability in the amount of 8,560 for money he received from the sale of the Insurance Centre's assets in 1994. He further testified that in January 1994, prior to the sale of the Insurance Centre, he received a $42,000 bonus which had an estimated tax liability of $16,750. The family court concluded that because the husband's 1994 income tax liability was not payable on or before March 22, 1994, the date of filing, it was not a marital debt.

We find the family court erred in failing to designate the 1994 tax liability as a marital debt to the husband. Although the husband's tax liability was not payable until after the date of filing, the record reflects he incurred this liability in January 1994, prior to the date of filing. As a result, it should have been considered a marital liability. *See* S.C. Code Ann. §§ 20-7-472(13) and 20-7-473 (Supp. 1995). Moreover, it was unfair for the court to determine that the proceeds from the sale of the Insurance Centre were marital property, but not consider the tax consequences to the husband resulting from that sale. Upon remand, the family court should take this liability into account when equitably distributing the marital estate.

## D.

The husband also asserts the family court erred in requiring him to assume an $83,647.24 debt owed to the Insurance Centre. On May 23, 1994, the husband entered into a loan agreement with the Insurance Centre for $83,647.24, payable in the amount of $1,578.53 per month for five years beginning May 25, 1994.

The husband testified he owed the Insurance Centre approximately $83,000 of this debt at the time of filing.[3] He further testified this debt was incurred as a result of an accumulation of overdrawings against his commissions, bad debts which were "written off" and business expenses which were higher than his reimbursements. The husband stated this money had been owed to the Insurance Centre for several years.

---

[3] Apparently, this debt had been reduced or liquidated at time the motion for reconsideration was argued.

We find no error in the family court's characterization of the debt owed to the Insurance Centre. The family court correctly considered it a marital debt. Upon remand, the court should reassess the responsibility for payment of this debt in reaching a fair determination of the equitable distribution issue.

## VI.

The husband asserts the family court erred in apportioning the marital estate. He argues the court awarded the wife more than 50% of the marital assets, but required him to assume virtually all of the marital debts.

South Carolina Code Ann. § 20-7-472 (Supp. 1995) enumerates factors the family court should consider in apportioning the marital estate. The family court explicitly addressed these statutory factors in its order. The family court awarded the wife a 50% interest in the marital estate and the husband does not appeal this percentage award. Thus, it is the law of the case. *Prevatte v. Prevatte*, 297 S.C. 345, 377 S.E. (2d) 114 (Ct. App. 1989). However, in light of our reversal of several issues involving marital assets and debts, we remand for a redetermination of the assets each party is entitled to. Nevertheless, the percentage of the estate awarded to each spouse shall not be altered on remand.

## VII.

The husband next claims the court erred in awarding the wife alimony in the amount of $1,500 per month. The husband argues the amount of alimony is excessive in light of the wife's needs, his expenses and the allocation of marital assets and debts.

## A.

The husband primarily challenges the family court's finding as to his income.[4] First, the husband argues the court erred in finding his salary to be $8,000. The husband listed on his finan-

---

[4] The family court found the husband had the following income:

| | |
|---|---|
| Salary | $ 8,000* |
| Income from sale of the Insurance Centre | $ 2,100* |
| Rental Income from Green Street Condominium | $ 500 |
| Note Receivable from Kay Insurance Company | $ 480* |
| Additional Income from Insurance Centre | $ 833* |
| TOTAL | $ 11,913 |

*contested values

cial declaration a salary of $7,500 per month. The husband testified his salary is really a draw against his commissions. He testified further that in the beginning of 1994 his salary was $8,500, but he reduced this amount to $8,000 in July 1994. He further testified after reducing his salary, he began earning more than he was drawing from the company. Based on the conflicting evidence and testimony, we find no abuse of discretion in the court's assessment of the husband's salary.

### B.

As to the family court's finding the husband had additional income in the amount of $2,100 derived from the sale of the Insurance Centre's business, we remand this issue for reconsideration. As stated above, the wife is entitled to an interest in that portion of the purchase price of the Davis contract that represents the value of the Insurance Centre's assets. On remand, the court shall consider the husband's share of payments representing the value of the covenant not to compete as income to him.[5]

### C.

The husband next claims that in calculating his income, the family court improperly included monthly payments of $833 he receives from the Insurance Centre. The husband testified the $833 amount is an expense reimbursement from his employment. He testified it is not income to him personally, but is intended for the payment of expenses associated with his business. He further testified he loses money on the business expense reimbursement. He also testified the amount was based on his earned commissions, and the amount would remain the same whether he had zero expenses or $5,000 worth of expenses. The husband did not list his business expenses or the reimbursement amount on his financial declaration. Based on our review of the record, we find this amount does not constitute income to the husband, but is a business expense reimbursement.

### D.

The husband complains the family court erred in consider-

---

[5] In view of the fact the Davis contract provides that the monthly payments shall first be applied to liquidate the obligation of payment for the Insurance Centre's hard assets, this payment may not contain monies for the liquidation of the covenant not to compete obligation.

ing as income the $480 monthly payments from the Kay note receivable. He argues these payments are not income because these funds are applied directly to the debt he owes the Insurance Centre. He also argues the amount of the Kay receivable has now been discounted and the proceeds have been applied to his debt with the Insurance Centre.[6]

Even though the husband applies the proceeds from the Kay receivable to his indebtedness, we find these proceeds still constitute income. Upon remand, the trial court should determine the actual amount the husband would have been entitled to receive under the recently discounted note had his share of payments not been applied toward his indebtedness to the Insurance Centre.

South Carolina Code Ann. § 20-3-130 (Supp. 1995) delineates the factors the family court should consider in awarding alimony. The family court explicitly addressed each of these factors in its order. Because we have remanded the equitable distribution award together with the issue of the husband's income, which factors are relevant to an award of alimony, we also remand the issue of alimony for reconsideration. *See Josey v. Josey,* 291 S.C. 26, 351 S.E. (2d) 891.

## VIII.

The husband next asserts the family court erred in ordering him to pay the wife's private investigator fees.

The husband argues the private investigator's report was not related to the invoice which the family court relied on to make the award. There is no testimony in the record to explain why the report and invoice appear to have been issued from different detective agencies. However, at the hearing on the husband's motion for reconsideration, the wife's counsel stated the agencies had merged. In any event, the husband did not object to the introduction of the report and invoice.

The family court ordered the husband to pay the wife's private investigator fees in the amount of $1,490 on the basis the husband initially denied adultery, which necessitated the services of a private investigator.

While the husband admitted in October 1994 to having sexual intercourse with Ms. Drawdy beginning in April 1994, he earlier denied having an affair. The wife introduced a private

---

[6] This was apparently done in 1995.

investigator report to show the husband was seeing Ms. Drawdy as early as March 26, 1994.

South Carolina Code Ann. §§ 20-3-120 (1985) and 20-3-██ 130 (Supp. 1995) authorize the family court to order payment of suit money to either party in a divorce. An award of attorney fees rests within the sound discretion of the trial court and should not be disturbed on appeal absent an abuse of discretion. *Doe v. Doe,* — S.C. —, 459 S.E. (2d) 892 (Ct. App. 1995). The family court is given broad discretion in this area. *Id.* The same considerations that apply to awarding attorney fees also apply to awarding litigation expenses. *Nienow v. Nienow,* 268 S.C. 161, 232 S.E. (2d) 504 (1977). Reimbursable expenses include reasonable and necessary expenses incurred in obtaining evidence of a spouse's infidelity. *See Stevenson v. Stevenson,* 295 S.C. 412, 368 S.E. (2d) 901 (1988).

Based on our review of the record, we find the wife's employment of a private investigator to be justified and his fee reasonable. The husband did not admit adultery until October 14, 1994. His refusal to admit the truth necessitated the wife's employment of a private investigator. We find no abuse of discretion in the family court's award of private investigator fees.

## IX.

The husband next asserts the family court erred in re-██ quiring him to pay one-half of the wife's attorney fees and for the services of her CPA. He argues that as a result of the division of the marital estate and alimony awarded the wife, she is in a better financial position to pay these expenses than he.

Based on our decision to reverse several substantive results the wife achieved at the trial level, we remand the issue of attorney fees to be redetermined by the family court. *See Sexton v. Sexton,* 310 S.C. 501, 427 S.E. (2d) 665 (1993). This decision in no way hampers the family court from making the same or a similar award on remand.

Regarding the CPA expenses, the wife testified she ██ and her attorney attempted to determine the value of the husband's interest in the Davis receivable. After several requests, the husband's attorney suggested the wife and her attorney determine the value. As a result, the wife re-

tained a CPA. In view of the complexity of the valuation of the Davis receivable, we find no abuse of discretion in the family court's decision to require the husband to pay the wife's CPA expenses.

## CONCLUSION

In conclusion, we reverse so much of the family court's order as: (1) discounted the values of the parties' respective retirement plans for unrealized tax purposes; (2) found the Kay note receivable was marital property subject to equitable distribution; (3) failed to include among the wife's assets a $6,000 account receivable owed to her by the parties' emancipated daughter; (4) disallowed a $25,310 debt representing the husband's 1994 income tax liability; (5) found $833 monthly payments from the Insurance Centre to the husband constituted income rather than business expense reimbursements; and (6) found the value of the husband's covenant not to compete was marital property subject to equitable distribution. In light of our holding, we remand the case to the family court for reconfiguration of an equitable distribution award, redetermination of the wife's alimony award, and reconsideration of attorney fees and costs. All other issues on appeal are affirmed as set forth herein above.

Affirmed in part, reversed in part and remanded.

GOOLSBY and ANDERSON, JJ., concur.