# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Michael P. Thornton, Respondent,

v.

Anita L. Thornton, Appellant.

Appellate Case No. 2016-001177

-----

Appeal From Dorchester County
William J. Wylie, Jr., Family Court Judge

-----

Opinion No. 5688
Heard October 1, 2018 – Filed October 23, 2019

-----

## AFFIRMED AS MODIFIED

-----

Megan Catherine Hunt Dell, of Dell Family Law, P.C., of
Charleston; and Theresa Marie Wozniak Jenkins, of
Theresa Wozniak Jenkins, Attorney at Law, LLC, of
Charleston, both for Appellant.

Michael P. Thornton, of Ridgeville, pro se.

-----

**WILLIAMS, J.:** In this domestic relations matter, Anita L. Thornton (Wife)
appeals the family court's final divorce decree, arguing the family court erred in (1)
identifying, valuing, and apportioning marital assets and debts; (2) miscalculating
Wife's child support obligation; (3) awarding primary custody of the parties' two
children to Michael P. Thornton (Husband); (4) failing to find Wife prejudiced by
a "structural" error related to a hearing on her petition to enforce visitation; (5)
relying too heavily on the guardian ad litem's (GAL) conclusions; (6) relying on
the forensic consultant, Dr. Marc Harari's conclusions, which were based on

information provided by the GAL; (7) granting Husband a divorce on the ground of adultery; (8) failing to find a conflict of interest regarding a personal relationship between Husband and an employee of the Dorchester County Clerk of Court; and (9) requiring the parties to pay their own attorney's fees, requiring Wife to pay a greater percentage of the GAL's fees and Dr. Harari's fees, and requiring Wife to pay the private investigator's fees. We affirm as modified.[1]

## FACTS/PROCEDURAL HISTORY

Husband and Wife married on November 16, 1996. The parties have two emancipated children. In 2011, Husband introduced Wife to his co-worker, Charles Stringfellow (Stringfellow). Stringfellow and his son spent significant time with Husband, Wife, and the parties' children. Wife indicated Husband encouraged her relationship with Stringfellow. Wife and Stringfellow began to spend time alone together, and Wife talked with Stringfellow about the problems she and Husband had in their relationship. In April or May 2012, Husband became suspicious of Wife's activities after he witnessed Wife consistently coming home late at night and discovered phone calls and text messages between Wife and Stringfellow. When Husband confronted Wife, she denied engaging in an extramarital affair. Husband hired Steven Russell, a private investigator, to follow Wife and document her activities because Husband believed Stringfellow was Wife's paramour. Russell observed Wife and Stringfellow at Stringfellow's apartment on a number of occasions.

In August 2012, Husband filed for divorce on the ground of adultery. That action was administratively dismissed, and Husband filed a new complaint on January 9, 2014, again seeking a fault-based divorce on the ground of adultery. Wife answered and counterclaimed against Husband, seeking a divorce on the ground of one year's continuous separation.

The family court held an eight-day final merits hearing over the course of three months and subsequently issued a final order and decree of divorce (the Final Order), granting Husband a divorce on the ground of Wife's adultery. The Final Order awarded joint custody of the minor children to the parties with Husband as the primary legal and physical custodian. The Final Order required Wife to pay

---

[1] Appellant conceded at oral argument that the issues concerning equitable distribution, grounds for divorce, and fees and costs are the only issues remaining before this court due to the emancipation of the parties' children.

sixty-seven percent of the GAL's fees[2] and sixty-seven percent of Dr. Harari's fees.[3] Wife was also required to reimburse Husband $3,770 for his private investigator's fees. Each party was responsible for his or her own attorney's fees.

As to equitable distribution, the Final Order found Wife was entitled to one-half of the value of Husband's 401K Account (the 401K Account) as of May 12, 2014 ($56,040.69), which amounted to $28,020.35. The Final Order also required each party to pay one-half of a $27,100 debt owed to the 401K Account (the Loan), so the family court reduced Wife's portion of the 401K Account and awarded Wife $14,470 from the 401K Account. The Final Order subsequently required Wife to pay one-half of the $12,254.95 remaining balance of the Loan (the Remaining Loan Balance). Each party was ordered to pay one-half of the outstanding debt owed to Verizon Wireless (the Verizon Debt). Wife was awarded one-half of Husband's pension plan (the Pension Plan) upon its vesting on June 8, 2016 ($72,034.08), which amounted to $36,017.04. The Final Order required Husband to pay Wife $6,623.95 for her equity in a Jayco Hornet Camper (the Camper). With regards to the former marital home (the Home), both parties requested and the family court ordered Husband to remove Wife's name from the mortgage, refinance the Home within ninety days, and pay Wife one-half of the equity. Wife filed a Rule 59(e), SCRCP, motion seeking reconsideration, which the family court denied. This appeal followed.

## ISSUES ON APPEAL

I.    Did the family court err in identifying, valuing, and apportioning marital assets and debts?

II.   Did the family court err in granting a divorce to Husband on the ground of adultery?

III.  Did the family court err in requiring the parties to pay their own attorney's fees, requiring Wife to bear a greater portion of the fees incurred by the GAL and Dr. Harari, and requiring Wife to reimburse Husband for the private investigator's fees?

---

[2] The family court calculated sixty-seven percent of the GAL's fees to be $13,531.63
[3] The family court calculated sixty-seven percent of Dr. Harari's fees to be $7,872.50.

**STANDARD OF REVIEW**

The appellate court reviews decisions of the family court de novo. *Stoney v. Stoney*, 422 S.C. 593, 596, 813 S.E.2d 486, 487 (2018) (per curiam). In a de novo review, the appellate court is free to make its own findings of fact but must remember the family court was in a better position to make credibility determinations. *Lewis v. Lewis*, 392 S.C. 381, 385, 709 S.E.2d 650, 651–52 (2011). "Consistent with this de novo review, the appellant retains the burden to show that the family court's findings are not supported by a preponderance of the evidence; otherwise, the findings will be affirmed." *Ashburn v. Rogers*, 420 S.C. 411, 416, 803 S.E.2d 469, 471 (Ct. App. 2017). On the other hand, evidentiary and procedural rulings of the family court are reviewed for an abuse of discretion. *Stoney*, 422 S.C. at 594 n.2, 813 S.E.2d at 486 n.2.

**LAW/ANALYSIS**

**I.     Equitable Distribution**

Wife argues the family court erred in the equitable division of the Loan, the 401K Account, the Camper, the Pension Plan, the Verizon Debt, and the Home.

"In reviewing a division of marital property, an appellate court looks to the overall fairness of the apportionment." *Brown v. Brown*, 412 S.C. 225, 235, 771 S.E.2d 649, 655 (Ct. App. 2015). "Even if the family court commits error in distributing marital property, that error will be deemed harmless if the overall distribution is fair." *Doe v. Doe*, 370 S.C. 206, 213–14, 634 S.E.2d 51, 55 (Ct. App. 2006).

**A.     The Loan**

Wife argues the family court erred in (1) finding the Loan was a marital debt and (2) equitably apportioning the Loan. We affirm the family court's finding that the Loan was a marital debt and the apportionment of the 401K Account, but we modify the family court's apportionment of the Loan.

**1.     The Loan as Marital Property**

"For purposes of equitable distribution, a 'marital debt' is a debt incurred for the joint benefit of the parties regardless of whether the parties are legally liable or whether one party is individually liable." *Wooten v. Wooten*, 364 S.C. 532, 546, 615 S.E.2d 98, 105 (2005). Subsection 20-3-620(B)(13) of the South Carolina

Code (2014) requires the family court to consider "existing debts incurred by the parties or either of them during the course of the marriage" when equitably apportioning the parties' marital property. Subsection 20-3-620(B)(13) "creates a rebuttable presumption that a debt of either spouse incurred prior to the beginning of marital litigation is a marital debt and must be factored in the totality of equitable apportionment." *Pruitt v. Pruitt*, 389 S.C. 250, 264, 697 S.E.2d 702, 710 (Ct. App. 2010). "Therefore, when a debt is proven to have accrued before the commencement of marital litigation, the burden of proving the debt is non-marital rests on the party who makes such an assertion." *Schultze v. Schultze*, 403 S.C. 1, 8, 741 S.E.2d 593, 597 (Ct. App. 2013).

Husband testified that in May 2012 he obtained the Loan for $27,100 for marital purposes. He admitted he did not tell Wife about the Loan. Husband presented undisputed testimony that he used the Loan funds to pay various marital bills and to repay loans from his parents that were obtained by Husband and Wife to pay marital bills such as their mortgage payment. Husband asserted he made all of the payments towards the Loan, and the current Loan balance is $12,254.95 (the Remaining Loan Balance). Wife did not present any evidence regarding the nature of the Loan or contradicting Husband's testimony about the use of its funds to rebut the presumption that the Loan was a marital debt. *See Pruitt*, 389 S.C. at 264, 697 S.E.2d at 710 (finding subsection 20-3-620(B)(13) "creates a rebuttable presumption that a debt of either spouse incurred prior to the beginning of marital litigation is a marital debt and must be factored in to the totality of the equitable apportionment"). We find Wife has failed to meet her burden of proving the Loan is non-marital. *See Schultze*, 403 S.C. at 8, 741 S.E.2d at 597 ("[W]hen a debt is proven to have accrued before the commencement of the marital litigation, the burden of proving the debt is non-marital rests on the party who makes such an assertion."). Therefore, we find the family court did not err in classifying the Loan as a marital debt or in finding Husband and Wife are equally responsible for the Loan.

### 2. Apportionment of the 401K Account and the Loan

The family court erred in reducing Wife's portion of the 401K Account by one-half of the amount of the Loan while also requiring Wife to pay one-half of the Remaining Loan Balance. Requiring Wife to pay one-half of the Remaining Loan Balance while simultaneously reducing her portion of the 401K Account by half of the Loan would result in overpayment by Wife. Thus, we modify the family court's apportionment of the Remaining Loan Balance to make Husband responsible for the entire Remaining Loan Balance. We affirm the family court's

apportionment of the 401K Account with Husband receiving $41,570.34 and Wife receiving $14,470.35. This apportionment satisfies Wife's responsibility for one-half of the Loan.

### B.    The Camper

Wife argues the family court erred in its valuation of the Camper. Specifically, Wife argues it was an error of law for the family court to average the values for the Camper assigned by Husband and Wife.

Wife testified the parties bought the Camper in 2007 or 2008 for $24,000. Wife asserted the Camper had a current value of $16,955, and Husband testified the Camper's current value was approximately $9,000 to $10,000. The parties did not present an appraisal to the family court and failed to provide other credible evidence of valuation. In the Final Order, the family court determined the Camper's value was $13,247.90 by averaging the values provided by the parties and awarding Wife $6,623.95, one-half of the value. We find the family court erred in averaging the values provided by the parties to arrive at a value, but upon our de novo review, we find the value of $13,247.90 is appropriate and within the range of the evidence presented. *See Ferguson v. Ferguson*, 300 S.C. 1, 5, 386 S.E.2d 267, 269 (Ct. App. 1989) (finding it is inappropriate for the family court to average the property values testified to by the parties to arrive at a value), *superseded by statute on other grounds*, S.C. Code Ann. § 20-3-130(D) (2014), *as recognized by Gilfillin v. Gilfillin*, 344 S.C. 407, 544 S.E.2d 829 (2001)); *Pirri v. Pirri*, 369 S.C. 258, 264, 631 S.E.2d 279, 283 (2006) ("A family court may accept the valuation of one party over another, and the court's valuation of martial property will be affirmed if it is within the range of evidence presented."). Therefore, we find Wife is entitled to $6,623.95, one-half of the Camper's value.

### C.    The Pension Plan

Wife argues the family court erred in awarding her a specific, numerical amount of the Pension Plan because the total value of the Pension Plan used by the family court is not supported by the evidence. We agree.

A nonvested pension plan is subject to equitable distribution. *Ball v. Ball*, 314 S.C. 445, 447, 445 S.E.2d 449, 450 (1994). However, because "the distribution of the other assets is not affected by the award of the nonvested pension plan, its exact dollar value is not crucial." *Id*. at 447, 445 S.E.2d at 451. "Rather, the court must only determine the portion of the plan to which the spouse is entitled." *Id*. at 447–

48, 445 S.E.2d at 451.  While benefits do not have to be vested to be subject to equitable division, "they are not marital property unless they are earned during the marriage." *Mullarkey v. Mullarkey*, 397 S.C. 182, 189, 723 S.E.2d 249, 253 (Ct. App. 2012); *Shorb v. Shorb*, 372 S.C. 623, 629, 643 S.E.2d 124, 127 (Ct. App. 2007) ("[T]his [c]ourt has consistently held that both vested and nonvested retirement benefits are marital property if the benefits are acquired during the marriage and before the date of filing."); S.C. Code Ann. § 20-3-630(A) (2014) ("[M]arital property . . .  means all real and personal property which has been acquired by the parties during the marriage and which is owned as of the date of filing or commencement of the marital litigation.").  This court has held when there are successive actions, the date of filing or commencement of marital litigation that should be used in determining whether property is marital "is triggered by the 'same litigation which brings about the equitable division.'" *Chanko v. Chanko*, 327 S.C. 636, 639–40, 490 S.E.2d 630, 632 (Ct. App. 1997) (*quoting Shannon v. Shannon*, 301 S.C. 107, 112, 390 S.E.2d 380, 383 (Ct. App. 1990)); *id.* at 638–640, 490 S.E.2d at 631–32 (finding that the family court did not err in using the date of the subsequent filing of an action for equitable division—instead of the date of a previous action that was stricken for failure to timely prosecute— in determining what constituted marital property).

At the hearing, Husband testified the Pension Plan did not vest until June 8, 2016, and at that time, the lump sum value of the Pension Plan would be $72,034.08.  The family court awarded Wife one-half of that amount—$36,017.04—upon the vesting of the Pension Plan.  However, other documentation indicated different lump sum values because the Pension Plan was not yet vested.  We find the family court erred in awarding Wife an exact dollar amount from the Pension Plan because the value of the Pension Plan upon vesting was unknown.  We modify the family court's order to award Wife one-half of the Pension Plan accrued between the date of the parties' marriage, November 16, 1996, and the date of the second filing, January 9, 2014, as of the time the Pension Plan vests.  *See Shorb*, 372 S.C. at 629, 643 S.E.2d at 127 ("[N]onvested retirement benefits are marital property if the benefits are acquired during the marriage and before the date of filing."); *Chanko*, 327 S.C. at 339–40, 490 S.E.2d at 632 (finding that when determining if property is marital the date of filing or the commencement of litigation from the case that brings about the equitable division should be used by the family court).

###   D.     The Verizon Debt and the Home

Wife argues the family court erred in finding the Verizon Debt was not a marital debt and in failing to include an affirmative obligation for Husband to pay Wife

fifty percent of the equity in the Home.  We find these arguments are without merit because the Final Order divided the Verizon Debt as a marital debt and ordered each party to pay fifty percent of the debt, and the Final Order required Husband to pay Wife fifty percent of the equity in the Home within ninety days.

In considering the overall fairness of the equitable distribution—with the aforementioned modifications—we find the overall equitable distribution is fair. *See Brown*, 412 S.C. at 235, 771 S.E.2d at 655 ("In reviewing a division of marital property, an appellate court looks to the overall fairness of the apportionment.").

## II.    Ground for Divorce

Wife argues the family court erred in granting Husband a divorce on the ground of adultery because Husband failed to prove she possessed the inclination and opportunity to commit adultery.  We disagree.

"Proof of adultery as a ground for divorce must be 'clear and positive and the infidelity must be established by a clear preponderance of the evidence.'" *Brown v. Brown*, 379 S.C. 271, 277–78, 665 S.E.2d 174, 178 (Ct. App. 2008) (quoting *McLaurin v. McLaurin*, 294 S.C. 132, 133, 363 S.E.2d 110, 111 (Ct. App. 1987)). "Because of the 'clandestine nature' of adultery, obtaining evidence of the commission of the act by the testimony of eyewitnesses is rarely possible, so direct evidence is not necessary to establish the charge." *Id*. at 278, 665 S.E.2d at 178 (quoting *Fulton v. Fulton*, 293 S.C. 146, 147, 359 S.E.2d 88 (Ct. App. 1987)). "[A]dultery may be proven by circumstantial evidence that establishes both a disposition to commit the offense and the opportunity to do so." *Brown*, 379 S.C. at 278, 665 S.E.2d at 178; *see also Nemeth v. Nemeth*, 325 S.C. 480, 484, 481 S.E.2d 181, 183 (Ct. App. 1997) ("Circumstantial evidence showing the opportunity and inclination to commit adultery is sufficient to establish a prima facie case." (emphasis omitted)). In general, this "proof must be sufficiently definite to identify the time and place of the offense and the circumstances under which it was committed." *Loftis v. Loftis*, 284 S.C. 216, 218, 325 S.E.2d 73, 74 (Ct. App. 1985).  "[H]owever, evidence placing a spouse and a third party together on several occasions, without more, does not warrant a finding of adultery." *Gorecki v. Gorecki*, 387 S.C. 626, 633, 693 S.E.2d 419, 422 (Ct. App. 2010). Sexual intercourse is not required to establish adultery; sexual intimacy is sufficient to support a finding of adultery. *Nemeth*, 235 S.C. at 486, 481 S.E.2d at 184.

We find the family court properly granted a divorce to Husband on the ground of adultery because Husband presented clear and positive proof of Wife's infidelity. *See Brown*, 379 S.C. at 277–88, 665 S.E.2d at 178. Husband testified he began to suspect Wife was committing adultery when she began consistently coming home late at night and he discovered Wife's late night and early morning phone calls and text messages with Stringfellow. Russell, Husband's private investigator, testified Wife went to Stringfellow's apartment at 8:48 P.M. on June 23, 2012, and remained in the apartment behind closed doors until 1:20 A.M. on June 24, 2012. Around 1:00 A.M. the same night, Clayton, another private investigator, witnessed Stringfellow walk Wife to her car and observed Wife and Stringfellow exchange a kiss. Russell tracked Wife's car to Stringfellow's apartment complex again on June 26, 2012, and noted Wife and Stringfellow remained in Stringfellow's apartment from 8:38 P.M. until 11:46 P.M. After Stringfellow's son discovered Russell's surveillance that evening, Russell noted Wife and Stringfellow acted "consistent with someone having been caught" when they exited Stringfellow's apartment. Russell also noted Stringfellow had changed clothes and Wife appeared disheveled. Finally, Russell testified that on another occasion during his investigation he personally observed Wife and Stringfellow spend the night together at Wife's mother's house.

Conversely, Wife testified that she and Stringfellow were friends and Husband encouraged her to spend time with Stringfellow and to confide in Stringfellow about issues in their marriage. She indicated she exercised with Stringfellow and played tennis with Stringfellow and his son. Wife testified that during the six months before the parties' separation, she began to disengage emotionally from her relationship with Husband. Wife denied kissing Stringfellow before her separation from Husband, and she averred that she did not begin a romantic relationship with Stringfellow until January 2013, after Husband filed for divorce the first time.

We find this evidence establishes Wife's inclination and disposition to commit adultery with Stringfellow and her opportunity to do so at Stringfellow's apartment on June 23, 2012, and June 26, 2012. *See Nemeth*, 325 S.C. at 484, 481 S.E.2d at 183 ("Circumstantial evidence showing the opportunity and inclination to commit adultery is sufficient to establish a prima facie case." (emphasis omitted)). Therefore, we affirm the family court's grant of a divorce to Husband on the ground of adultery.[4]

---

[4] Because our finding that the family court properly granted Husband a divorce on the ground of adultery is dispositive, we decline to address Wife's argument that the family court erred in declining to consider an alternate ground for divorce

## III.    Fees and Costs

Wife argues the family court erred in requiring each party to pay his or her own attorney's fees, failing to consider whether the GAL's fees were reasonable, requiring Wife to pay a greater percentage of the GAL's fees and Dr. Harari's fees, and requiring Wife to reimburse Husband for the fees incurred from his private investigator.  We disagree.

Section 20-3-130(H) of the South Carolina Code (2014) authorizes the family court to order payment of litigation expenses such as attorney's fees, expert fees, and investigation fees to either party in a divorce action.  In determining whether to award attorney's fees, the family court should consider the following factors: "(1) the party's ability to pay his/her own attorney's fee; (2) [the] beneficial results obtained by the attorney; (3) the parties' respective financial conditions; and (4) [the] effect of the attorney's fee on each party's standard of living." *E.D.M. v. T.A.M.*, 307 S.C. 471, 476–77, 415 S.E.2d 812, 816 (1992).  In awarding attorney's fees, the family court must make specific findings of fact on the record for each of the required factors. *McKinney v. Pedery*, 413 S.C. 475, 489, 776 S.E.2d 566, 574 (2015).  "When a party's uncooperative conduct in discovery and litigation increases the amount of the other party's fees and costs, the [family] court can use this as an additional basis" in its decision of whether to award attorney's fees. *Bojilov v. Bojilov*, 425 S.C. 161, 185, 819 S.E.2d 791, 804 (Ct. App. 2018).  This court has found the same equitable considerations that apply to attorney's fees also apply to costs. *Garris v. McDuffie*, 288 S.C. 637, 644, 344 S.E.2d 186, 191 (Ct. App. 1986).

---

because Husband could not demonstrate by a clear preponderance of the evidence that she committed adultery prior to their separation. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not address remaining issues on appeal when the disposition of a prior issue is dispositive).  Further, Wife's two remaining arguments against a grant of divorce on the ground of adultery related to public policy and the family court's ability to grant a divorce on the ground of one year's continuous separation.  However, Wife neither raised these arguments to the family court at the hearing nor in her Rule 59(e), SCRCP, motion.  Thus, we find these arguments are not preserved for this court's review. *See Doe v. Roe*, 369 S.C. 351, 375–76, 631 S.E.2d 317, 330 ("An issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review.")

### A.    Attorney's Fees

Wife argues the family court erred in requiring each party to pay his or her own attorney's fees.  We disagree.

Upon our de novo review, we find the evidence in the record supports the family court's requirement that each party pay his or her own attorney's fees.  Both parties are employed, and while Husband has a higher monthly income than Wife, Wife received a loan from Stringfellow to "pay all of her fees and expenses for this litigation."  Wife also received portions of the 401K Account, the Pension Plan, the Camper, and the Home in the equitable apportionment of the parties' marital property.  Following the parties' separation, Husband paid for Wife's health insurance, and he paid child support to Wife even though he had primary custody of and was financially responsible for the parties' children.  Requiring Husband to pay Wife's attorney's fees would have been detrimental to the standard of living of Husband and the parties' children.  Additionally, Husband's attorney achieved more beneficial results in the litigation.  *See E.D.M.*, 307 S.C. at 476–77, 415 S.E.2d at 816 (requiring a family court to consider the party's ability to pay his or her own attorney's fees, the beneficial results obtained by the attorney, the parties' respective financial conditions, and the effect of the attorney's fee on each party's standard of living when determining whether to award attorney's fees).  Furthermore, Wife's filing of additional discovery motions and insisting on pursuing custody despite the children's "unwavering desire" to live with Husband led to additional costs in the action.  *See Bojilov*, 425 S.C. at 185, 819 S.E.2d at 804 (noting the court may consider increases in a party's fees and costs caused by the other party's uncooperative conduct in discovery and litigation when determining whether to award attorney's fees); *Bodkin v. Bodkin*, 388 S.C. 203, 223, 694 S.E.2d 230, 241 (Ct. App. 2010) ("This court has previously held when parties fail to cooperate and their behavior prolongs proceedings, this is a basis for holding them responsible for attorney's fees.").  Accordingly, we affirm the family court's requirement that each party pay his or her own attorney's fees.

### B.    Reasonableness of the GAL Fees

Wife argues the family court erred in failing to consider whether the GAL's fees were reasonable.

A court-appointed GAL "is entitled to reasonable compensation, subject to the review and approval of the [family] court."  S.C. Code Ann. § 63-3-850(B) (2010).  Subsection 63-3-850(B) requires the family court to consider the following factors in determining the reasonableness of the GAL's fees and costs:

(1) the complexity of the issues before the court;
(2) the contentiousness of the litigation;
(3) the time expended by the guardian;
(4) the expenses reasonably incurred by the guardian;
(5) the financial ability of each party to pay fees and
costs; and
(6) any other factors the court considers necessary.

This court has held that "any other factors the court considers necessary" includes the ultimate work product of the GAL and the completeness of his or her investigation. *Pirayesh v. Pirayesh*, 359 S.C. 284, 297, 596 S.E.2d 505, 512–13 (Ct. App. 2004).[5]

The family court originally authorized the GAL to charge a reasonable fee not to exceed $5,000 at an hourly rate of $150; however, the GAL requested and received approval for multiple fee increases throughout the course of the litigation,[6] and the parties agreed to pay Dr. Harari's trial retainer from the GAL's account. At the conclusion of the GAL's testimony, she indicated her fees totaled $20,196.63. Wife admits the dispute was complex and contentious. *See* § 63-3-850(B)(1)–(2) (requiring the family court to consider the complexity of the issues before the court and the contentiousness of the litigation when determining the reasonableness of a GAL's fees and costs). However, Wife argues the GAL expended an unreasonable amount of time.

Upon a de novo review of the record, the GAL's invoices to the parties reveal a thorough investigation and extensive involvement in this case. Her involvement included drafting and submitting reports on her findings, reviewing documents, interviewing eleven individuals, testifying during the eight-day hearing, paying Dr. Harari's retainer from her fees after the parties agreed to do so, and responding to Wife's subpoena for the GAL's entire file and all communications related to the parties' children. Furthermore, the GAL's billing system applied a default hourly rate lower than the authorized $150 to many of the charges, resulting in discounts

---

[5] *Pirayesh* cites to section 20-7-1533 of the South Carolina Code (Supp. 2003). 359 S.C. at 297–98, 596 S.E.2d at 512–13. Section 63-3-850 was formerly cited as section 20-7-1533.

[6] Subsection 63-3-850(A) allows a GAL to exceed the fee initially authorized by the judge if the GAL provides notice to both parties and obtains the judge's written authorization.

to the parties, and the GAL credited any interest charges back to the parties. Therefore, we find no excessive or unnecessary charges. *See* § 63-3-850(B)(3)–(4) (requiring the family court to consider the time expended and the expenses reasonably incurred by the GAL in determining the reasonableness of a GAL's fees and costs). As noted in our discussion of the attorney's fees, both parties had the ability to pay the fees. *See* § 63-3-850(B)(5) (requiring the family court to consider the financial ability of each party to pay fees and costs in determining the reasonableness of a GAL's fees and costs). Thus, we find the GAL's fees were reasonable.

### C. Apportionment of the GAL and Dr. Harari's Fees

Wife argues the family court erred in requiring her to pay the majority of the GAL and Dr. Harari's fees. We disagree.

A de novo review of the record indicates Wife's conduct during the course of the litigation warrants her being held responsible for a larger proportion of the fees. Wife refused to comply with the GAL's requests for records and the GAL's request that she submit to a test to detect alcohol consumption. Wife also insisted on pursuing custody of the parties' sons despite (1) their "unwavering desire" to live with Husband and (2) her estrangement from her sons. *See Klein v. Barrett*, 427 S.C. 74, 89, 828 S.E.2d 773, 781 (Ct. App. 2019) (affirming the family court's finding that the wife should bear the majority of the fees and costs because she was in a superior financial position and because "a significant portion of the GAL fee was incurred solely as a result of [the wife's] continuously submitted documents and correspondence and other communication to the GAL over the course of [the] litigation"); *see also Garris*, 288 S.C. at 644, 344 S.E.2d at 191 (noting the same equitable considerations that apply to attorney's fees also apply to costs); *Bojilov*, 425 S.C. at 185, 819 S.E.2d at 804 (noting that the court may consider increases in a party's fees and costs caused by the other party's uncooperative conduct in discovery and litigation when determining whether to award attorney's fees). Accordingly, we affirm the family court's award and allocation of the GAL and Dr. Harari's fees.

### D. Private Investigator Fees

Wife argues the family court erred in requiring her to pay Husband's private investigator fees. We disagree.

Because Husband provided sufficient evidence to obtain a divorce on the statutory ground of adultery, we find the family court appropriately required Wife to

reimburse Husband for his private investigator fees.  *See* S.C. Code Ann. §§ 20-3-120 and 20-3-130 (2014) (authorizing the family court to order payment of suit money to either party in a divorce); *Ellerbe v. Ellerbe*, 323 S.C. 283, 298, 473 S.E.2d 881, 889 (Ct. App. 1996) ("Reimbursable expenses include reasonable and necessary expenses incurred in obtaining evidence of a spouse's infidelity.").  Thus, we affirm the family court on this issue.

**CONCLUSION**

Accordingly, the decision of the family court is

**AFFIRMED AS MODIFIED.**

**HUFF and SHORT, JJ., concur.**