490 S.E.2d 630 .

**Patricia A. CHANKO, Respondent/Appellant,**

v.

**Gary P. CHANKO, Appellant/Respondent.**

**No. 2706.**

Court of Appeals of South Carolina.

Submitted June 3, 1997.

Decided July 28, 1997.

Rehearing Denied Sept. 18, 1997.

Robert M. Ariail, of Mitchell & Ariail, Greenville, for appellant/respondent.

William J. Barnes, Greenville, for respondent/appellant.

HEARN, Judge:

This is a cross-appeal from a divorce decree which, *inter alia*, awarded Patricia A. Chanko (Wife) alimony, child support, and attorney fees, and equitably divided the parties' marital property. We affirm as modified.

## FACTS

The parties were married in Canada in 1982. It was Wife's first marriage and the third marriage for Gary P. Chanko (Husband). They have two boys, who were ages nine and eleven at trial.

Husband, who has an M.B.A. degree, has been employed with Fluor Daniel since prior to the parties' marriage. His gross income is approximately $85,000 per year. He was fifty years old at the time of trial.

Wife, age thirty-four, was a homemaker throughout most of the marriage. She received a B.A. degree in accounting a few months prior to trial. Although she was unemployed, the family court judge imputed income to her of $17,680 per year.

Wife instituted an action for alimony, custody, child support, equitable division, and related relief in June 1993.[1] Judge John W. Kittredge issued a Temporary Order on July 9, 1993. Before trial, Husband's counsel requested a continuance because Husband was working in the Philippines. The continuance was granted and the action was ultimately struck for failure to prosecute within 270 days.[2]

Wife commenced this action on January 24, 1995. At the hearing on August 29, 1995, the trial judge ruled that the date of filing of this action was the pertinent date for identification and valuation purposes.[3] Judge Rucker granted Wife a divorce on the ground of one year's continuous separation and

---

1. Wife's Statement of the Case refers to an earlier action filed in 1992 and dismissed by Wife, but the record contains no pleadings from that action.

2. Wife moved, with the consent of Husband's counsel, to restore this action for a final hearing, but the request was denied.

3. We note Judge Rucker's written order states that he used January 24, 1995, for purposes of valuation.

confirmed the parties' agreement that custody should be granted to Wife. He ordered Husband to pay $1,334 in monthly child support, $1,000 in alimony, and certain expert witness fees and attorney fees. The trial judge also divided all assets equally.[4] Both parties appeal.

## HUSBAND'S APPEAL

Husband asserts the family court judge erred in using January 24, 1995, as the date of filing for purposes of identifying the parties' marital property. He also asserts the trial court erred in including his entire retirement fund from Fluor Daniel as marital property and in awarding Wife a fifty percent interest in it. Finally, he argues the family court judge erred in awarding Wife a fifty percent interest in Husband's savings account and cash on hand.

### I.

Husband argued at trial that the date for determining marital property should be June 15, 1993, the filing date of the prior action. He made this argument in an effort to exclude his post-separation increase in his retirement accounts from being considered marital property. On appeal, Husband argues Judge Rucker incorrectly ruled that he had to use January 24, 1995, or "the date of filing . . . of the case we are presently hearing." We believe Judge Rucker's decision is consistent with both the equitable division statute and the case law interpreting it.

Marital property is defined as "all real and personal property which has been acquired by the parties during the marriage and *which is owned as of the date of filing or commencement of marital litigation. . . ."* S.C.Code Ann. § 20–7–473 (Supp.1996) (emphasis supplied). Thus, "marital property" does not exist until the date when marital litigation is filed or commenced. *Prosser v. Pee Dee State Bank,* 295 S.C. 212, 214, 367 S.E.2d 698, 700 (1988). In cases involving successive actions, this court has held the statute is triggered by the "same litigation which brings about the equitable

---

4. The parties had previously sold the marital home and divided equally net proceeds totaling $52,920.

division." *Shannon v. Shannon,* 301 S.C. 107, 112, 390 S.E.2d 380, 383 (Ct.App.1990). "It is not enough that the parties in the past engaged in some litigation if that litigation did not serve as the vehicle for the equitable division." *Id.* This reasoning was extended to increases in the value of marital property in *Hickum v. Hickum,* 320 S.C. 97, 463 S.E.2d 321 (Ct.App.1995).

In *Hickum,* as here, the husband argued that certain property should have been excluded from the marital estate because it increased in value or was "acquired" after the entry of a *pendente lite* order in prior litigation. *Id.* at 100, 463 S.E.2d at 323. This court rejected that argument, stating: "It would be incongruous to hold ... that a temporary order in a prior action should limit the definition of what constitutes marital property in this case, when the marital property itself did not even 'exist' under the law until [the filing of the instant action.]" *Id.* at 101, 463 S.E.2d at 323.[5]

## *II.*

Husband also asserts the family court judge erred in including his entire retirement account as a marital asset and in awarding Wife fifty percent of it because he was employed at

---

5. Although we affirm the trial judge's ruling that January 24, 1995—the date of the filing of this action—was the trigger date for identification and valuation of marital property, we note that neither *Shannon* nor *Hickum* would have prevented the trial judge from taking into account Husband's post-separation contribution to the retirement plans. *Murphy v. Murphy,* 319 S.C. 324, 329, 461 S.E.2d 39, 41–42 (1995). Moreover, one of the statutory factors a family court must consider in apportioning marital assets is the "contribution of each spouse to the acquisition, preservation, depreciation, or appreciation in value of the marital property...." S.C.Code Ann. § 20–7–472(3) (Supp.1996). Here, however, Husband offered no evidence to support his post-separation contribution to his retirement plans. He thus is in no position to complain about the trial judge's failure to take his post-separation contribution into account. *See Hough v. Hough,* 312 S.C. 344, 347, 440 S.E.2d 387, 389 (Ct.App.1994) (litigant may not sit back and fail to offer proof on a matter and then be heard to complain on that issue); *Roberts v. Roberts,* 296 S.C. 93, 99, 370 S.E.2d 881, 884 (Ct.App.1988), *affirmed as modified on other grounds by* 299 S.C. 315, 384 S.E.2d 719 (1989) (the party having peculiar knowledge of the facts or control of evidence on an issue has the burden of presenting evidence on it).

Fluor Daniel more than seven years prior to the marriage. We agree.

The trial judge valued Husband's retirement account at $399,822.11, as of December 31, 1994. His order makes no reference to that portion of the retirement account attributed to the seven years Husband worked for Fluor Daniel prior to the parties' marriage. The trial judge awarded Wife a fifty percent interest in this asset.

There is little testimony in the record regarding valuation of this rather substantial account. Wife's expert, Dr. Charles Alford, a professor of economics and business at Furman University, reviewed Husband's financial packet and testified he had a retirement plan and a matching 401K with a combined value of $399,822.51 as of December 31, 1994. Dr. Alford did not, however, provide a breakdown of how these monies were accumulated.

Husband offered no expert testimony on this issue. The following colloquy, which occurred during Husband's direct testimony, is Husband's only offer of proof on the pre-marital value of his retirement plans:

Q. Do you have any idea how much you had accumulated in your—your two retirement type plans prior to the marriage?

A My recollection is the value of that fund in the end of the second quarter of '82 would have been seventy-five to eighty thousand dollars.

MS. JENNINGS: Your Honor, I object to that unless he has any expert testimony. Just, you know, to what he recollects.

THE COURT: He can testify to that. The weight given to it, though, is up to the Court.

A There is—I do have—there is [sic] statements that are issued at that time. I just don't have them with me. My last review of that, which was several weeks ago, I recall was that value.

■ While we recognize that Husband's testimony on this issue is vague and that expert testimony or documentary evidence on the pre-marital value of the retirement plans would have been preferable, it is undisputed that Husband

was employed at Fluor Daniel at least seven years prior to the marriage. Wife presented no evidence that the premarital portion of the retirement accounts had been transmuted, nor did she dispute the premarital value of the plans given by Husband. Under these circumstances, it was error for the trial judge to award Wife a fifty percent interest in the gross value of the plans.

Under our view of the evidence presented, the sum of $75,000 should be deducted from the value of the plans, as established by Dr. Alford, prior to the Wife receiving a fifty percent share in them.[6] The family court's order is modified accordingly.

### III

Husband listed $50,200 as cash on hand and $48,700 in savings on his sworn financial declaration. Although neither party introduced any evidence regarding these funds, Husband's counsel stated to the court that it was money accumulated "while he was in the Philippines" and "prior to the January [filing] date."

When the trial judge announced his intention to divide equally these funds after giving Husband credit for the $26,-000 received as his share of the marital home sale proceeds, Husband's counsel advised the court he had made a mistake in calculations. Following a recess, Husband's attorney stated Husband did not have cash "in his pocket," but had two accounts with "twenty-three in one and fifty-three in the other one."

The trial judge, in his final order, divided the money in the checking and savings accounts equally, after excluding the monies received by Husband from his fifty percent share of the sale of the home and $5,000 as regular income. He stated: "Husband, through his attorney, shall provide the necessary

---

6. Husband may well have been entitled to all interest attributable to the premarital portion of the retirement plans, but he failed to introduce any evidence of this amount at trial. He may not, therefore, complain on appeal about the trial judge's resolution of this issue. *See Hough,* 312 S.C. at 347, 440 S.E.2d at 389; *Roberts,* 296 S.C. at 99, 370 S.E.2d at 884.

documentation to satisfy this court and Plaintiff's counsel as to the one-half figure."

Husband now objects to the division of the funds, arguing there was no evidence at trial that they were marital property. We disagree.

■ Husband listed these funds on his financial declaration under the heading "All property of the parties known to me." It would not have been error for the family court judge to value these assets as stated on Husband's financial declaration. *See Hardwick v. Hardwick*, 303 S.C. 256, 259, 399 S.E.2d 791, 793 (Ct.App.1990). Here, however, the family court judge allowed the Husband to provide, through his counsel, the corrected amount he held in checking and savings accounts. Moreover, Husband's counsel conceded at trial that these funds were accumulated prior to the filing of this action. Thus, based on Husband's sworn financial declaration and the admission of his counsel, the family court judge properly held the funds were marital property.

■ We note that Husband offered no evidence that these funds were not marital property, nor did he endeavor to persuade the trial judge that Wife's share should be less than fifty percent because of his contribution to the acquisition of these funds. A litigant who fails to offer proof on an issue may not be heard to complain about the court's resolution of that issue. *Hough v. Hough*, 312 S.C. 344, 347, 440 S.E.2d 387, 389 (Ct.App.1994); *Hudson v. Hudson*, 294 S.C. 166, 169, 363 S.E.2d 387, 389 (Ct.App.1987); *Honea v. Honea*, 292 S.C. 456, 458, 357 S.E.2d 191, 192 (Ct.App.1987).

## *WIFE'S APPEAL*

Wife argues the family court judge erred in calculating Husband's gross monthly income for child support purposes, asserting Husband's "Time Off With Pay" (TOWP) benefits should have been included, as well as rental income from Husband's California condominium. She also argues Judge Sutherland erred in issuing an *ex parte* order allowing Husband to pay his child support and alimony directly to Wife instead of through the court.

## *I.*

Wife's expert, Dr. Alford, testified Husband's gross income should include, for purposes of calculating child support, certain fringe benefits, such as his TOWP benefits and his employer's contribution to his 401K plan. The trial judge, however, found Husband's gross monthly income to be $7,065, thus electing not to include these fringe benefits. Wife argues Husband's TOWP benefits should have been included and that his gross income should have been augmented by $935.21 per month. We disagree.

Fluor Daniel's employees receive TOWP instead of vacation and sick days. After twenty years of service, an employee earns up to 280 hours per year of TOWP, or 5.39 hours per week. When an employee takes a vacation or sick day, his TOWP, which is placed in a monetary account, is reduced. TOWP accumulates each year to the extent the monetary account is not converted to sick or vacation days or otherwise cashed out. At the time of filing, Husband was receiving the maximum amount of TOWP and his account contained $28,-850.25 (715 hours at $40.35 per hour). These funds could be converted by Husband [7] or redeemed for cash upon his severance from Fluor Daniel.[8]

Although Husband's TOWP benefits may possess some characteristics typical of income, we do not believe they should be considered as income for child support purposes. While we recognize that Regulation 114–4720(A)(2) of the South Carolina Child Support Guidelines defines gross income as "income from any source," Husband does not actually receive TOWP funds unless he elects to "cash" them in, or until his severance from Fluor Daniel. S.C.Code Ann.Regs. 114–4720(A)(2) (Supp.1996). Moreover, they are subject to depletion if he should take sick or vacation days. If we were to hold TOWP benefits includable as part of Husband's gross income, he would, in effect, be penalized for not taking sufficient sick and vacation days to be credited against his TOWP.

---

7. Husband testified he had converted his TOWP benefits only once in 15 years.

8. Wife did not argue that Husband's TOWP benefits were an asset subject to equitable division.

We note also the difficulty inherent in attributing a set amount of TOWP each month as income since the amount could fluctuate based upon the employee's use of vacation or sick days. Finally, we believe Husband's TOWP benefits are more akin to vacation pay or sick leave than they are to income. Since the Child Support Guidelines do not include vacation pay or sick leave within the definition of gross income, the trial judge properly held Husband's TOWP benefits were not includable.

## II.

Husband has been part-owner of a condominium in Mammoth, California, since prior to the parties' marriage. Wife contends the family court judge erred in finding the condominium was not a marital asset. Husband testified he had no knowledge of the current monthly rental rate on the condominium. He also professed not to know about the regime fees and could only guess at the amount of the mortgage. His income tax returns reflected no income from this asset.

■ While we agree with the trial judge that Husband's testimony concerning his lack of knowledge of the monthly costs or income from this condominium is "amazing," Wife presented absolutely no evidence that Husband received any income from it. Although we recognize Husband was less than forthcoming, Wife had available to her, through discovery, the means to acquire evidence on this issue. Since her position was contrary to Husband's position that he received no income from this asset, Wife was required to present evidence to support her argument. Absent that proof, we cannot say the family court judge erred in failing to impute income to Husband from the rental of his condominium. *See Hough,* 312 S.C. at 347, 440 S.E.2d at 389; *Hudson,* 294 S.C. at 169, 363 S.E.2d at 389; *Honea,* 292 S.C. at 458, 357 S.E.2d at 192.

## III.

■ Wife's argument that Judge Sutherland erred in issuing an *ex parte* order permitting Husband to pay his alimony and child support directly to Wife is not properly before us. Wife appealed only from Judge Rucker's final order, not from

the subsequent order issued by Judge Sutherland at a support enforcement hearing. Under these circumstances, we cannot review it.

**AFFIRMED AS MODIFIED.**

CURETON and STILWELL, JJ., concur.