**Tina G. MCMILLAN, Respondent,**

v.

**Jimmy D. MCMILLAN, Appellant.**

**Appellate Case No. 2014–002151**
**Opinion No. 5426**

Court of Appeals of South Carolina.

Heard June 6, 2016

Filed July 13, 2016

</div>

584

586

Bruce Wyche Bannister and Luke Anthony Burke, both of Bannister, Wyatt & Stalvey, LLC, of Greenville, for Appellant.

Christopher David Kennedy and N. Douglas Brannon, both of Kennedy & Brannon, P.A., of Spartanburg, for Respondent.

GEATHERS, J.:

In this divorce action between Jimmy D. McMillan (Husband) and Tina G. McMillan (Wife), Husband appeals the family court's final order of divorce, arguing the family court erred in finding: (1) Husband's business that was created prior to the marriage was transmuted into marital property; (2) Husband's businesses that were created during the marriage were marital property; (3) Husband did not have a nonmarital interest in his retirement accounts; and (4) Wife's jewelry that was acquired during the marriage was nonmarital property. Husband also argues the family court erred in equitably apportioning the marital estate without weighing the statutory factors and sealing the record without consideration

of the necessary factors. We affirm in part, reverse in part, and remand.

## FACTS/PROCEDURAL HISTORY

Husband and Wife married on October 4, 1996. At the time of the final divorce hearing, Husband was sixty-six years old, and Wife was forty-eight years old. The parties did not have any children together. Wife left the marital residence on December 5, 2011. On December 31, 2011, Wife filed a complaint against Husband seeking an order of separate support and maintenance and requesting equitable division of their marital property. On January 23, 2013, Husband filed an amended answer and counterclaim seeking a divorce on the grounds of adultery.

The family court held a hearing on November 12, 13, and 14, 2013. The parties presented evidence about several businesses Husband created with his partner Buddy Carter. In 1977, Husband and Carter started McMillan–Carter, Inc., a grading company. During the marriage, Husband and Carter formed Carmac, LLC in 1996 and Tractor Factor, LLC in 2001 as holding companies for McMillan–Carter's real estate and equipment. Husband and Carter also formed Reynolds Utilities, LLC in 2005; Peloton, Inc. in 2006; and Panacea Biofuels, LLC in 2008.

Husband testified he did not intend for McMillan–Carter or any of the other companies to be marital property. Wife testified they "always lived out of" the businesses during the marriage. The parties also presented evidence about their other real and personal property, including their marital home at 171 Tucapau Road, Husband's retirement account, and Wife's jewelry.

On March 5, 2014, the family court entered a final order granting the parties a divorce on the statutory ground of adultery. The family court found, "Throughout this marriage, [Husband] built his business holdings significantly to include multiple businesses and business properties. [Husband] worked on a regular and daily basis to expand his businesses and the marital estate. [Wife] worked in the marital businesses and cared for the home." The family court identified four parcels of real estate owned by Husband's businesses; these parcels were appraised for a total of $1,571,000 with $580,140.17 of debt. Additionally, the family court identified certain personal property owned by the businesses that had

marital value, including Husband's fifty percent share in business vehicles valued at $26,481 and oil containers valued at $125,000. The family court found, "The business properties listed above, both real and personal[,] are marital property and subject to equitable division." The family court also found Wife's jewelry "[was a gift] and not subject to equitable distribution." The family court found the total value of the marital estate was $1,629,468.41. It apportioned to Husband "possession and ownership of all of his business interests to include real and personal property identified at [the] trial." After apportioning the parties' remaining real and personal property between Husband and Wife, it ordered Husband to pay Wife $595,263.20 to balance the equitable division of the marital estate. The family court further ordered that the record be sealed "[g]iven the vast amount of financial information that was introduced into evidence in this matter and the fact that much of this information deals with [Husband's] business partner[,] who is not a party to this action[,] and the fact that [Wife] is a sitting Magistrate Court Judge."

On March 24, 2014, Husband filed a Rule 59, SCRCP, motion to alter or amend the family court's order, which the family court denied. This appeal followed.

## ISSUES ON APPEAL

1. Did the family court err by finding the parties' work for Husband's companies constituted a basis for transmutation when they were properly compensated for their work?

2. Did the family court err by finding McMillan–Carter was transmuted into marital property when the company was created prior to the marriage and no marital funds or efforts were used to increase equity in the company?

3. Did the family court err by finding Carmac and Tractor Factor were marital property when the companies were acquired in exchange for nonmarital property?

4. Did the family court err by finding Reynolds, Panacea, and Peloton were marital property when the vast majority of funds contributed to the companies were nonmarital funds?

5. Did the family court err by finding Husband did not have a nonmarital interest in his retirement accounts when

Husband presented evidence he had funds in the retirement accounts prior to the marriage and no contrary evidence was presented?

6. Did the family court err by finding Wife's jewelry acquired during the marriage was nonmarital property?

7. Did the family court err by dividing the marital estate without giving weight to the fifteen statutory factors the court is required to consider for equitable division?

8. Did the family court err by sealing the record without the consent of the parties and without considering the factors required by the Rule 41.1(d) of the South Carolina Rules of Civil Procedure?

## STANDARD OF REVIEW

█ "In appeals from the family court, this [c]ourt reviews factual and legal issues de novo." *Crossland v. Crossland*, 408 S.C. 443, 451, 759 S.E.2d 419, 423 (2014). "Thus, this [c]ourt has jurisdiction to find facts in accordance with its own view of the preponderance of the evidence; however, this broad scope of review does not require the [c]ourt to disregard the findings of the family court, which is in a superior position to make credibility determinations." *Id.*

## LAW/ANALYSIS

### I. Marital Estate

#### A. Transmutation of McMillan–Carter

█ Husband first argues the family court erred by finding McMillan–Carter, a company he formed prior to the marriage, was transmuted into marital property because no marital funds were used to increase equity in the company.[1] Husband further argues he and Wife were appropriately compensated for their work in the company with salaries and their use of income from McMillan–Carter to support the marriage did not

---

1. We note the family court did not explicitly find McMillan–Carter was transmuted or that any of Husband's other businesses were marital property. However, we find the family court treated each of the companies as marital property based on our review of the order.

demonstrate intent to transmute the business to marital property. We agree.

"A party claiming an equitable interest in property upon divorce bears the burden of proving the property is marital." *Wilburn v. Wilburn*, 403 S.C. 372, 382, 743 S.E.2d 734, 740 (2013). "If the party presents evidence to show the property is marital, the burden shifts to the other spouse to present evidence to establish the property's nonmarital character." *Id.* "If the opposing spouse can show that the property was acquired before the marriage or falls within a statutory exception, this rebuts the prima facie case for its inclusion in the marital estate." *Pruitt v. Pruitt*, 389 S.C. 250, 261, 697 S.E.2d 702, 708 (Ct. App. 2010).

Property acquired prior to the marriage is generally nonmarital property and not subject to equitable division. S.C. Code Ann. § 20-3-630(A)(2) (2014). "Even if property is nonmarital, it may be transmuted into marital property during the marriage." *Pruitt*, 389 S.C. at 261, 697 S.E.2d at 708. "Transmutation occurs if the property is utilized in support of the marriage or in such a manner as to evidence an intent to make it marital property." *Id.* "Transmutation is a matter of intent to be gleaned from the facts of each case." *Smallwood v. Smallwood*, 392 S.C. 574, 579, 709 S.E.2d 543, 545 (Ct. App. 2011) (quoting *Jenkins v. Jenkins*, 345 S.C. 88, 98, 545 S.E.2d 531, 537 (Ct. App. 2001)).

"The spouse claiming transmutation must produce objective evidence showing that, during the marriage, the parties themselves regarded the property as the common property of the marriage." *Id.* at 579, 709 S.E.2d at 545–46 (quoting *Johnson v. Johnson*, 296 S.C. 289, 295, 372 S.E.2d 107, 110–11 (Ct. App. 1998)). "Such evidence may include placing the property in joint names, transferring the property to the other spouse as a gift, using the property exclusively for marital purposes, commingling the property with marital property, using marital funds to build equity in the property, or exchanging the property for marital property." *Id.* at 579, 709 S.E.2d at 546 (quoting *Johnson*, 296 S.C. at 295, 372 S.E.2d at 111). However, "[t]he mere use of separate property to support the marriage, without some additional evidence of intent to treat it as property of the marriage, is not sufficient

to establish transmutation." *Id.* (quoting *Johnson*, 296 S.C. at 295–96, 372 S.E.2d at 111).

We agree with Husband that Wife failed to produce objective evidence at trial showing McMillan–Carter was transmuted. *See id.* at 579, 709 S.E.2d at 545–46; *id.* at 579, 709 S.E.2d at 546. At trial, Wife presented some evidence of commingling the business with marital property because she testified she used a company car, phone, and gas card, and she testified they planned vacations and "always lived out of the company." However, we find the preponderance of the evidence did not demonstrate an intent to treat McMillan–Carter as marital property. *See id.* at 579, 709 S.E.2d at 545 ("Transmutation is a matter of intent to be gleaned from the facts of each case.").

Husband never placed the business in Wife's name, and Michael Meilinger—an expert witness qualified in business valuation—testified no marital funds were contributed to McMillan–Carter during the marriage. Furthermore, although Wife worked for the company for a year and a half without earning a salary, she then performed part-time work for the company for several years and earned a $52,000 annual salary. Wife did not make any business decisions, and Meilinger testified she was fairly compensated for her work, which does not support transmutation. Additionally, Husband was paid a regular salary by the business, which Meilinger testified exceeded the fair market value for his work. *See Wilburn*, 403 S.C. at 385, 743 S.E.2d at 741 ("[W]hile the use of property in support of a marriage is relevant to transmutation, the mere use of income from nonmarital assets does not transmute those assets into marital property and is not relevant to transmutation."). We find the lack of intent to transmute is also demonstrated by the fact that Husband did not own the entire company, but rather was a fifty-fifty partner with Carter.

Moreover, we find the facts of this case are distinguishable from other cases in which our courts determined businesses were transmuted. For example, in *Pittman v. Pittman*, the supreme court found a husband's surveying business was transmuted when the wife reduced the hours she worked as a nurse to work full time for the business, she was paid a higher salary for her services with the expectation it would benefit

both parties in retirement together, she was listed as the secretary of the business, the husband and wife made business decisions together, her personal credit was used in support of the business, and marital funds were used to discharge business debt. 407 S.C. 141, 148–52, 754 S.E.2d 501, 505–07 (2014). Whereas the wife in *Pittman* played an integral part in the business and helped make decisions, in the present case, Wife was not actively involved in the business and only drew a salary for administrative work. Furthermore, there is no evidence here of marital funds being used to support the business as there was in *Pittman*.

Similarly, we find this case is distinguishable from *Edwards v. Edwards*, in which the produce stand on the husband's inherited land was the parties' main source of income during the marriage, the wife worked seven days a week during the stand's thirty-two week selling period, the wife did not receive wages for her work for the produce stand, and the parties had building permits naming both of them as owners of the property. 384 S.C. 179, 184–85, 682 S.E.2d 37, 39–40 (Ct. App. 2009). Here, Husband did not recognize Wife as an owner of the company like the couple in *Edwards* did in their business. Further, whereas the wife in *Edwards* was actively involved in the produce stand but not paid, Wife here was compensated for her work for McMillan–Carter.

We find this case is more analogous to *Wilburn*, in which our supreme court held the wife's contributions to the management of the husband's timber company and use of income from the timber company to support the marriage did not establish transmutation. 403 S.C. at 384–85, 743 S.E.2d at 740–41; *see also Smallwood*, 392 S.C. at 580, 709 S.E.2d at 546 (finding the wife's contributions of time and labor to the husband's three rental properties without pay were insufficient to prove transmutation when there was no evidence the parties regarded the rental properties as common to the marriage). Overall, although Wife testified they "lived out of the company," we find the preponderance of the evidence does not support an intent to transmute. Wife was adequately compensated for her work, Wife did not make business decisions, Husband drew a regular salary from the company, Husband did not give Wife stock or name her an owner,

Husband had a business partner, and no marital funds were used to increase equity in the company.

## B. Tractor Factor and Carmac

■ Husband also argues the family court erred by finding Tractor Factor and Carmac—two businesses formed during the marriage—were marital property because they were acquired in exchange for nonmarital property from McMillan–Carter. We agree.

■ "Generally, property acquired by either spouse during the marriage is marital property unless the acquisition falls under one of several exceptions." *Jenkins*, 345 S.C. at 100, 545 S.E.2d at 537–38. "One such exception is that property acquired during the marriage in exchange for nonmarital property is nonmarital." *Id.* at 100, 545 S.E.2d at 538; S.C. Code Ann. § 20–3–630(A)(3). "The burden to show property is not subject to equitable distribution is upon the one claiming that property acquired during the marriage is not marital." *Brown v. Brown*, 379 S.C. 271, 283, 665 S.E.2d 174, 181 (Ct. App. 2008).

We find Husband has met his burden of proving the family court erred by determining Tractor Factor was marital property subject to equitable distribution. *See id.*; *Feldman v. Feldman*, 380 S.C. 538, 542, 670 S.E.2d 669, 671 (Ct. App. 2008) ("[O]ur broad scope of review does not relieve the appellant of the burden of convincing this [c]ourt that the family court committed error."). Meilinger testified Tractor Factor was created with one hundred percent nonmarital funds from McMillan–Carter, and McMillan–Carter loaned Tractor Factor money for down payments on equipment. Wife did not provide any testimony showing Tractor Factor received contributions from marital funds. *See Roe v. Roe*, 311 S.C. 471, 477, 429 S.E.2d 830, 834 (Ct. App. 1993) (finding uncontradicted testimony offered by one spouse is sufficient to establish property is nonmarital). Accordingly, we find evidence in the record shows Tractor Factor was nonmarital property because it was acquired in exchange for nonmarital funds from McMillan–Carter. *See* § 20–3–630(A)(3) (providing property acquired during the marriage in exchange for nonmarital property is nonmarital).

Similarly, we find Husband met his burden of showing Carmac was nonmarital property. Meilinger testified Husband and Carter formed Carmac entirely with funds from McMillan–Carter. Wife did not provide any testimony about marital funds being contributed to Carmac. *See Roe*, 311 S.C. at 477, 429 S.E.2d at 834 (finding uncontradicted testimony offered by one spouse is sufficient to establish property is nonmarital). Accordingly, we find evidence in the record shows Carmac was nonmarital property because it was acquired in exchange for nonmarital property from McMillan–Carter. *See* § 20–3–630(A)(3) (providing property acquired during the marriage in exchange for nonmarital property is nonmarital).

■ Even though we find Carmac is nonmarital property, real estate owned by Carmac could still be marital property if there was evidence marital funds were used to purchase the real estate. *See Pool v. Pool*, 321 S.C. 84, 89, 467 S.E.2d 753, 756–57 (Ct. App. 1996), *aff'd as modified*, 329 S.C. 324, 494 S.E.2d 820 (1998) (finding exercise equipment purchased for a nonmarital business during the marriage was marital property because the husband used marital funds to purchase it and did not establish the equipment was separate property). Carmac owned four parcels of real estate, which the family court identified as marital business properties. Meilinger testified Carmac borrowed money in 1997 to purchase 451 Pennsylvania Avenue. Meilinger also testified McMillan–Carter paid the debt for real properties owned by Carmac. Otherwise, the record does not contain evidence of the source of funds for the parcels of real estate. We find the real estate was purchased with nonmarital funds and, therefore, should not have been classified as marital property. *See* § 20–3–630(A)(3); *Wilburn*, 403 S.C. at 386, 743 S.E.2d at 741 ("[The wife's] testimony, absent any evidence to the contrary, is sufficient to establish the source of the funds in these accounts."). Accordingly, we find the family court erred by classifying the real estate owned by Carmac as marital property and reverse the family court's finding.

### C. Reynolds, Peloton, and Panacea

■ Husband argues the family court erred by finding his three other businesses created during the marriage—Reynolds, Peloton, and Panacea—were marital property. Husband

argues the minimal percentage of marital funds contributed to these companies compared to the amount of nonmarital funds contributed shows a lack of intent to treat the businesses as marital property. We disagree.

We find Husband has failed to meet his burden of proving the family court erred in determining Reynolds, Peloton, and Panacea were marital. *See Feldman*, 380 S.C. at 542, 670 S.E.2d at 671 ("[O]ur broad scope of review does not relieve the appellant of the burden of convincing this [c]ourt that the family court committed error."); *Brown*, 379 S.C. at 283, 665 S.E.2d at 181 ("The burden to show property is not subject to equitable distribution is upon the one claiming that property acquired during the marriage is not marital.").

Neither party disputes Husband contributed some marital funds to Reynolds, Peloton, and Panacea. Because the evidence in the record shows Reynolds, Peloton, and Panacea were each formed during the marriage using a portion of marital funds, we find these companies were marital, and Husband did not meet his burden of proving the companies were nonmarital. *See* S.C. Code Ann. § 20–3–630(A) (defining marital property generally as "all real and personal property ... acquired by the parties during the marriage"); *see also Pool*, 321 S.C. at 89, 467 S.E.2d at 756–57 (finding husband used marital funds to purchase exercise equipment and failed to meet his burden of proving the equipment was nonmarital property; thus, the equipment purchased during the marriage was marital property); *Brown*, 379 S.C. at 283, 665 S.E.2d at 181.[2]

### D. Retirement Account

 Husband argues the family court erred by finding he did not have a nonmarital interest in his retirement account because he presented evidence of a $75,000 premarital interest in the account, which Wife did not dispute. We agree.

---

2. Although Husband argues the infusion of marital funds did not transmute the companies because he did not intend to treat them as marital, we find the companies were marital because they were formed during the marriage using a percentage of marital funds. Because the companies were marital, we need not reach any arguments about transmutation.

"[B]oth vested and nonvested retirement benefits are marital property if the benefits are acquired during the marriage ...." *Shorb v. Shorb*, 372 S.C. 623, 629, 643 S.E.2d 124, 127 (Ct. App. 2007). However, property acquired before the marriage, including retirement benefits, is generally nonmarital property. *Id.*; S.C. Code Ann. § 20–3–630(A)(2).

In *Chanko v. Chanko*, this court held the family court erred by finding the husband's entire retirement account was a marital asset. 327 S.C. 636, 641–42, 490 S.E.2d 630, 633 (Ct. App. 1997). The husband accrued retirement benefits for seven years before the marriage and testified the retirement fund had an approximate value of $75,000 prior to the marriage. *Id.* The wife did not dispute the premarital value the husband assigned or present evidence that the premarital portion of the retirement account had been transmuted. *Id.* at 642, 490 S.E.2d at 633. This court held that even though the husband did not provide any documentary evidence of the premarital value, it was error to include the entire retirement account as marital property based on the evidence presented of premarital value. *Id.* at 641–42, 490 S.E.2d at 633.

We find the family court erred by failing to assign nonmarital value to a portion of Husband's retirement account. At trial, Husband did not testify that $75,000 of his retirement account accrued before the marriage. However, in his financial declaration, Husband stated the nonmarital portion of his retirement account had a $75,000 value. Additionally, Meilinger testified Husband reported a $75,000 nonmarital value of his retirement account. Wife did not testify about Husband's retirement account or dispute the $75,000 figure. We find this situation is analogous to *Chanko* as the financial declaration and Meilinger's testimony, which were undisputed by Wife, were sufficient evidence for Husband to establish a portion of his retirement account was nonmarital. *See Chanko*, 327 S.C. at 641–42, 490 S.E.2d at 633 (holding the family court erred in awarding the wife 50% of the husband's entire retirement when it was undisputed the husband worked seven years before the marriage and the wife did not dispute the premarital value of the retirement account that the husband testified to at trial); *Wilburn*, 403 S.C. at 386, 743 S.E.2d at 741 ("[The wife's] testimony, absent any evidence to the contrary, is sufficient to establish the source of the funds in these accounts."). Accordingly, because the preponderance of the evi-

dence shows Husband's retirement account had a $75,000 premarital value, we find the family court erred by classifying this portion as marital property. *See Crossland*, 408 S.C. at 451, 759 S.E.2d at 423 ("[T]his [c]ourt has jurisdiction to find facts in accordance with its own view of the preponderance of the evidence . . . .").

### E. Jewelry

■ Husband argues the family court erred by finding Wife's jewelry was nonmarital property because interspousal gifts are marital property subject to equitable division. We agree.

" '[M]arital property' . . . means all real and personal property which has been acquired by the parties during the marriage . . . ." S.C. Code Ann. § 20-3-630(A) (2014). "Interspousal gifts of property . . . are marital property which is subject to division." *Id.*

We find the family court erred in classifying the jewelry as nonmarital property. *See Crossland*, 408 S.C. at 451, 759 S.E.2d at 423 ("In appeals from the family court, this [c]ourt reviews factual and legal issues de novo."). At trial, Husband testified he bought some of Wife's jewelry and Wife bought some. Wife testified, "Well, the diamond, the engagement ring, we had traded up on that, so actually, he only paid half of what it was worth, but I honestly don't know." This evidence shows that either Wife bought the jewelry during the marriage or it was an interspousal gift from Husband, and we find Wife failed to meet her burden of proving to the family court it was nonmarital. *See* S.C. Code Ann. § 20-3-630(A); *id.*("Interspousal gifts of property . . . are marital property which is subject to division."); *Brown*, 379 S.C. at 283, 665 S.E.2d at 181 ("The burden to show property is not subject to equitable distribution is upon the one claiming that property acquired during the marriage is not marital."). Accordingly, we find the family court erred in not considering the value of the jewelry in the equitable distribution.

### F. Line of Credit

■ Husband argues Wife's $47,000 line of credit on the marital home after the separation should have been considered nonmarital debt. We agree.

At trial, Wife acknowledged she took a $47,000 line of credit on the marital home after the separation and commencement of litigation. She testified she "needed money to live on." We find Wife failed to prove this debt incurred after the commencement of the litigation was subject to equitable distribution. *See Wooten v. Wooten*, 364 S.C. 532, 547, 615 S.E.2d 98, 105 (2005) ("When a debt is incurred after marital litigation begins, the burden of proving the debt is marital rests upon the party who makes such an assertion."). Because Wife testified she used the money "to live on," we find the evidence in the record shows that the debt was not incurred for the joint benefit of the parties. *See id.* ("When a debt is incurred after the commencement of litigation but before the final divorce decree, the family court may equitably apportion it as a marital debt when it is shown the debt was incurred for marital purposes, *i.e.*, for the joint benefit of both parties during the marriage."); *id.* at 547, 615 S.E.2d at 105–06 (affirming this court's reversal of the family court's allocation of credit card debt incurred by the wife after the start of the marital litigation to the husband because the wife failed to prove it was a marital debt). Accordingly, we find the family court erred by not considering this debt as nonmarital.

## II. Equitable Division

We recognize our reversal of the family court's designation of certain property as marital property and Wife's jewelry as nonmarital property impacts the equitable distribution award. We specifically note that two of the factors a family court must consider in apportioning the marital estate are the value of the marital property and the nonmarital property of the parties. S.C. Code Ann. § 20–3–620(B)(3), (7) (2014). We have found the family court erred by classifying three businesses, a portion of Husband's retirement account, and a line of credit as marital and by considering Wife's jewelry nonmarital property. Accordingly, we remand this matter to allow the family court to consider the equitable apportionment anew, analyzing the statutory factors in light of our opinion.[3] *See Casey v.*

---

3. We note the family court may also consider Husband's contributions to acquiring the marital home in analyzing the equitable apportionment factors on remand. *See* S.C. Code Ann. § 20–3–620(B)(3) (providing the family court must give weight in such proportion as it finds appropriate

*Casey*, 293 S.C. 503, 505, 362 S.E.2d 6, 7 (1987) ("In some instances[,] the erroneous designation of an asset as marital property may require remanding for consideration of the entire equitable distribution award and alimony."); *Dickert v. Dickert*, 387 S.C. 1, 7, 691 S.E.2d 448, 451 (2010) (remanding the issue of equitable distribution after reversing the family court's decision about "enterprise goodwill" being marital property, explaining remand "will allow the family court to determine if a change in the marital apportionment should be made in light of the goodwill valuation change"). Because we are remanding this matter to the family court for a new equitable apportionment, we need not address Husband's argument that the family court erred by failing to give weight to the necessary statutory factors.[4]

## III. Sealing the Record

During oral argument, the parties consented to the unsealing of the record. Due to the parties' consent and because the family court did not consider the factors set forth in Rule 41.1(d) of the South Carolina Rules of Civil Procedure before sealing the record, we reverse this issue and order the family court to unseal the record on remand.

Based upon the foregoing, the decision of the family court is **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

HUFF and MCDONALD, JJ., concur.

---

to the value of the marital property, including "[t]he contribution of each spouse to [its] acquisition").

4. We also need not address Husband's argument that if we find Wife's company-owned Lexus was marital property, we should look to its fair market value instead of valuing it at $500 for purposes of equitable division. Because Husband raised this argument for the first time during oral argument, we decline to address it. *See Bochette v. Bochette*, 300 S.C. 109, 112, 386 S.E.2d 475, 477 (Ct. App. 1989) ("An appellant may not use either oral argument or the reply brief as a vehicle to argue issues not argued in the appellant's brief."); *see also Divine v. Robbins*, 385 S.C. 23, 44 n. 4, 683 S.E.2d 286, 297 n. 4 (Ct. App. 2009) (declining to address an issue raised for the first time in a reply brief).