**THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Tina G. McMillan, Respondent,

v.

Jimmy Dan McMillan, Appellant.

Appellate Case No. 2018-001054

———————————

Appeal From Spartanburg County
Dale Moore Gable, Family Court Judge

———————————

Unpublished Opinion No. 2022-UP-039
Heard September 14, 2021 – Filed February 2, 2022

———————————

**AFFIRMED AS MODIFIED**

———————————

Bruce Wyche Bannister and Luke Anthony Burke, both
of Bannister, Wyatt & Stalvey, LLC, of Greenville, for
Appellant.

Gwendolynn Wamble Barrett, of Barret Mackenzie,
LLC, of Greenville, for Respondent.

———————————

**PER CURIAM:**  In the current appeal, Jimmy Dan McMillan (Husband) argues
the family court erred by making new findings of fact on remand, failing to
properly and equitably divide the parties' marital estate, and awarding post-
judgment interest.  We affirm as modified.

**Facts and Procedural History**

Husband and Tina G. McMillan (Wife) married on October 4, 1996; no children were born of their marriage.  On December 5, 2011, Wife moved out of the marital home located at 171 Tucapau Road (Tucapau).  On December 16, 2011, Wife filed an action seeking an order of separate support and maintenance, alimony, and attorney's fees.  Husband answered and counterclaimed, denying Wife's entitlement to alimony, seeking a divorce on the ground of adultery, and requesting attorney's fees and costs.

The case was tried on November 12, 13, and 14, 2013, before the Honorable Dale Moore Gable.[1]  The parties presented evidence about several businesses Husband created with his business partner, including McMillan-Carter, Inc., which was incorporated in 1977.  During the parties' marriage, Husband and Buddy Carter formed Carmac, LLC and Tractor Factor, LLC as holding companies for McMillan-Carter's real estate and equipment.  Husband and Carter also formed Reynolds Utilities, LLC; Peloton, Inc.; and Panacea Biofuels, LLC.  While Husband testified he did not intend for any of these companies to be considered marital property, Wife explained they "always lived out of" the businesses during the marriage.  The parties also presented evidence about their other real and personal property.

By order dated March 11, 2014 (Original Order), the family court divided the marital property, awarded Husband a divorce on the statutory ground of adultery, and sealed the court file.[2]  Husband timely filed a motion to alter or amend, requesting that the family court reconsider certain provisions of the Original Order.  The family court denied Husband's motion, and Husband appealed.  The family court filed a subsequent order addressing attorney's fees, in which it found Wife prevailed on certain issues and ordered Husband to pay Wife $10,099.50 in

---

[1] At the time of trial, Wife was forty-eight and Husband was sixty-six.

[2]  The family court ordered the record be sealed "[g]iven the vast amount of financial information that was introduced into evidence in this matter and the fact that much of this information deals with [Husband's] business partner[,] who is not a party to this action[,] and the fact that [Wife] is a sitting Magistrate Court Judge." *McMillan v. McMillan*, 417 S.C. 583, 589, 790 S.E.2d 216, 219 (Ct. App. 2016) (alterations in original).

attorney's fees and costs. Husband's appeal from this fee award was consolidated with his appeal of the Original Order.

Husband achieved significant success in his prior appeal. *McMillan*, 417 S.C. 589, 790 S.E.2d 219. This court reversed the family court's classifications of McMillan-Carter, Inc.; Carmac, LLC; and Tractor Factor, LLC; as marital property, finding McMillan-Carter was not transmuted, and Carmac and Tractor Factor were acquired in exchange for non-marital property from McMillan-Carter. *Id.* at 590–95, 790 S.E.2d at 220–22. However, the court affirmed the family court's findings that Husband's three additional businesses (Reynolds, Peloton, and Panacea) were marital property. *Id.* at 596–97, 790 S.E.2d at 223. We agreed with Husband's argument that the family court erred in its consideration of his retirement account, and we classified $75,000 worth of these retirement funds as nonmarital. *Id.* at 597, 790 S.E.2d at 223–24. We further found the family court erred in classifying Wife's jewelry as nonmarital property and in failing to classify as nonmarital debt the funds from an equity line of credit Wife accessed on the marital home post separation. *Id.* at 598–99, 790 S.E.2d at 224. In sum, we affirmed in part, reversed in part, and remanded "to allow the family court to consider the equitable apportionment anew, analyzing the statutory factors in light of our opinion." *Id.* at 599, 790 S.E.2d at 225.

By agreement of the parties, the family court ruled its decision on remand would be "based upon the evidence and testimony presented at [the original trial], as well as the findings of the South Carolina Court of Appeals. There shall be no new evidence presented." After briefing by both parties, the family court issued its final order on remand, in which it ordered Husband to pay to Wife $209,446.50, plus judgment interest,[3] to equalize the property division, and awarded Wife $7,719.45 in attorney's fees and costs. The family court further ordered "[a]ll other provisions of the court's prior final order filed March 11, 2014 not inconsistent herewith shall remain in full force and effect." Husband moved to alter or amend. On May 25, 2018, the family court filed an amended final order, and Husband timely appealed.

**Standard of Review**

---

[3] The family court then subtracted $47,000 from this figure in light Wife's non-marital debt, "leaving a balance due to Wife of $162,446.50 as of June 5, 2014."

On appeal from the family court, the appellate court reviews factual and legal issues de novo. *Stoney v. Stoney*, 422 S.C. 593, 596, 813 S.E.2d 486, 487 (2018) (per curiam). Thus, the appellate court has the authority to find facts in accordance with its own view of the preponderance of the evidence. *Lewis v. Lewis*, 392 S.C. 381, 384, 392, 709 S.E.2d 650, 651, 655 (2011). However, this broad scope of review does not require the appellate court to disregard the fact that the family court, which saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Id.* at 385, 709 S.E.2d at 651–52. "Moreover, consistent with our constitutional authority for *de novo* review, an appellant is not relieved of his burden to demonstrate error in the family court's findings of fact." *Id.* at 392, 709 S.E.2d at 655. "Consequently, the family court's factual findings will be affirmed unless 'appellant satisfies this court that the preponderance of the evidence is against the finding of the [family] court.'" *Id.* (quoting *Finley v. Cartwright*, 55 S.C. 198, 202, 33 S.E. 359, 360–61 (1899)).

**Law and Analysis**

### I.    Findings of Fact

Husband argues the family court erred by making new findings of fact on remand where the original findings were not appealed and the new findings lack evidentiary support. Specifically, Husband takes issue with findings 2, 3, 4, and 6 of the amended final order.

"[A] trial court has no authority to exceed the mandate of the appellate court on remand." *Milton P. Demetre Fam. Ltd. P'ship v. Beckmann*, 413 S.C. 38, 52, 773 S.E.2d 596, 604 (Ct. App. 2014) (quoting *S.C. Dep't of Soc. Servs. v. Basnight*, 346 S.C. 241, 250, 551 S.E.2d 274, 279 (Ct. App. 2001)). "The mandate of the appellate court is jurisdictional. The trial court has a duty to follow the appellate court's directions." *Id.* (quoting *Prince v. Beaufort Mem'l Hosp.*, 392 S.C. 599, 605, 709 S.E.2d 122, 125 (Ct. App. 2011); *see Basnight*, 346 S.C. at 250–51, 551 S.E.2d at 279 ("Once a mandate is issued from an appellate court to a trial court, the trial court 'is vested with jurisdiction only to the extent conferred by the appellate court's opinion and mandate.'" (quoting 5 Am. Jur. 2d *Appellate Review* § 784, at 453 (1995))).

In our prior *McMillan* opinion, we "recognize[d] our reversal of the family court's designation of certain property as marital property and Wife's jewelry as nonmarital property impacts the equitable distribution award." *McMillan,* 417 S.C. at 599, 790 S.E.2d at 225. "We specifically note[d] that two of the factors a family

court must consider in apportioning the marital estate are the value of the marital property and the nonmarital property of the parties." *Id.* We found "the family court erred by classifying three businesses, a portion of Husband's retirement account, and a line of credit as marital and by considering Wife's jewelry nonmarital property." *Id.* Accordingly, we remanded this matter "to allow the family court to consider the equitable apportionment anew, analyzing the statutory factors in light of our opinion." *Id.* We further noted "the family court may also consider Husband's contributions to acquiring the marital home in analyzing the equitable apportionment factors on remand." *Id.* at 599 n.3, 790 S.E.2d at 225 n.3.

"When distributing marital property, the family court should consider all fifteen factors set forth in the Code." *Craig v. Craig*, 365 S.C. 285, 290, 617 S.E.2d 359, 361 (2005). The family court "must give weight in such proportion as it finds appropriate to all of the following factors" in apportioning marital property: (1) the duration of the marriage; (2) marital misconduct or fault of the parties; (3) the parties' contributions; (4) the income of each spouse; (5) the health of each spouse; (6) each spouse's need for training or education; (7) the nonmarital property of each spouse; (8) the parties' retirement benefits; (9) the existence of a spousal support award; (10) the use of the marital home; (11) any tax consequences; (12) the existence of any support obligations; (13) any lien or encumbrances on marital property; (14) child custody arrangements and obligations; and (15) such other relevant factors as the court enumerates. S.C. Code § 20-3-620 (B) (2014).

"Although statutory factors provide guidance, there is no formulaic approach for determining an equitable apportionment of marital property." *Lewis*, 392 S.C. at 391, 709 S.E.2d at 655. Here, there was never any agreement, order, or directive stating the trial court could not, or should not, make additional findings of fact based upon the trial record below in considering the equitable distribution anew pursuant to the prior opinion's mandate. No new evidence was presented on remand, and the family court set forth its findings to support its analysis of the statutory factors. In our view, it would be impossible for the family court to consider "the equitable apportionment anew" without reviewing the record and making commensurate findings of fact in its analysis. Therefore, we find generally that the family court acted in accordance with this court's directive on remand, and we address Husband's challenges to the court's specific findings below.

## A. Finding 2

In the Original Order, the family court determined Husband was retired and in the process of winding down his businesses. No other finding was made regarding the

parties' respective incomes and neither party appealed this finding. On remand, the family court found Wife earned $3,160.81 per month and Husband earned $4,000 at the time of trial. However, at trial, Wife did not dispute that she had recently received a raise and earned $42,000 annually, or $3,500 per month. Thus, we affirm as modified on this point to correct the family court's finding regarding Wife's monthly income. The appropriate figure is $3,500 per month.

Additionally, in the Original Order, the family court made no finding regarding the parties' dating prior to marriage. Wife testified "Husband did not want to marry her until he was financially able to take care of her without her working outside of the home." Husband did not dispute this, and neither party appealed this finding. On remand, the family court found the parties dated for eight years prior to marrying. There is evidence in the record supporting this finding of fact; however, we acknowledge Husband's argument that the parties' relationship prior to the marriage is irrelevant to the equitable distribution award here and likely exceeded the scope of the mandate. Thus, we modify the family court's order addressing this finding accordingly.

## B. Finding 3

The family court made no findings in the Original Order regarding Wife's duties in Husband's businesses or her indirect contributions to the marriage, and neither party appealed this finding. Husband argues the only evidence presented at trial was that Wife was appropriately compensated for her efforts in his business— Husband's expert opined Wife was appropriately compensated, and Wife admitted she received proper compensation. On remand, the family court found Wife contributed to the marriage extensively and contributed to Husband's businesses by working without adequate payment.

Although Wife testified she eventually received proper compensation from Husband's companies based upon her education, background, and work experience, she also testified she did not receive any compensation during a period of time early in their marriage. Wife initially worked unpaid for McMillan-Carter at night, using an Autocad program to assist the employees using the machinery the next day. She ran errands and helped in the office with bookkeeping, essentially acting as an administrator for the office. Additionally, Wife served as an event planner for Husband's business by entertaining at Christmas parties and summer parties, finding venues for events, calling vendors, arranging for catering, and doing other necessary event tasks.

While Wife admitted she had a housekeeper paid from Husband's income and she stopped cooking the family's meals when her son moved out several years prior to the parties' separation, it appears that Husband's sole considerations when analyzing Wife's indirect contributions as a homemaker related to cooking and cleaning. However, there is also evidence in the record showing Wife paid the parties' bills, was responsible for the daily maintenance and upkeep of the Tucapau property, and generally took care of the parties' personal lives, leaving Husband free to focus on running his various businesses. Additionally, Wife took over the care of one of Husband's daughters from his previous marriage—who had significant diagnosed health issues—when her mother was unable to do so and Husband could not accept her medical issues. Moreover, Wife made considerable efforts to help Husband mend his strained relationship with his daughters.

Because this court remanded this matter "to allow the family court to consider the equitable apportionment anew, analyzing the statutory factors in light of our opinion," the family court did not err in making new findings of fact regarding Wife's indirect contributions to the marriage, as this is one of the statutory factors the family court must weigh in making an equitable apportionment. *See* § 20-3-620 (B)(3) ("In making apportionment, the court must give weight in such proportion as it finds appropriate to . . . . the value of the marital property . . . . The contribution of each spouse to the acquisition, preservation, depreciation, or appreciation in value of the marital property, including the contribution of the spouse as homemaker; provided, that the court shall consider the quality of the contribution as well as its factual existence . . . . "). As this court has recognized, "in many long-term marriages, one spouse becomes the primary breadwinner while the other spouse makes less or even no money in order to have the flexibility to keep the household running smoothly." *Doe v. Doe*, 370 S.C. 206, 215, 634 S.E.2d 51, 56 (Ct. App. 2006). "This arrangement is agreed upon, often implicitly, among the parties, and it would be unfair to the spouse who undertook household duties for the family court to apportion the marital estate solely based on the parties' direct financial contributions." *Id.* Accordingly, we find no error as to finding 3.

## C. Finding 4

The family court made no finding in the Original Order regarding Husband's indirect contributions to the marriage, and neither party appealed this finding. Nevertheless, on remand, the family court found there was no testimony regarding Husband's indirect contributions to the marriage at trial.

Husband avers there is ample evidence in the record reflecting his indirect contributions to Wife and to the marriage, including paying for Wife to obtain her college degree and utilizing his political affiliations in Wife's appointment as a magistrate judge. However, our review of the record reveals Wife completed half of her four-year degree prior to the marriage, and after the parties were married, they paid for her tuition from the marital account. Regardless, Husband and Wife agree that Husband is responsible for her appointment and that he could work to prevent her from being reappointed at the end of her term. Based on Husband's financial assistance in at least a portion of Wife's college degree as well as his political connections, which likely aided in her appointment as a magistrate judge, we find Husband contributed to Wife's earning potential and assisted her in alleviating her need for additional training or education to achieve her income potential. *See* S.C. Code Ann. § 20-3-620 (B)(4) (mandating the family court must give weight in such proportion as it finds appropriate to "the income of each spouse, the earning potential of each spouse, and the opportunity for future acquisition of capital assets"); § 20-3-620 (B)(6) (addressing "the need of each spouse or either spouse for additional training or education in order to achieve that spouse's income potential"). Thus, we find the family court erred in finding there was no testimony as to Husband's indirect contributions to the marriage, and we modify the family court's order addressing this finding accordingly.

### D. Finding 6

The family court made no finding in the Original Order that Wife contributed premarital funds to the Tucapau property. Neither party appealed the lack of such findings. However, on remand, the family court found Wife put $16,000 from the proceeds of her premarital home into Tucapau.

The record supports this finding; in fact, Husband listed this contribution on his sworn financial declaration. Further, Tucapau is titled solely in Wife's name and is jointly mortgaged. There is also evidence showing the parties added on to the Tucapau home, and made constant improvements to the property over the course of their marriage. Thus, we find the family court did not err in making new findings of fact regarding Wife's contribution of funds. *See* § 20-3-620 (B)(3) ("In making apportionment, the court must give weight in such proportion as it finds appropriate to . . . . the value of the marital property . . . . The contribution of each spouse to the acquisition, preservation, depreciation, or appreciation in value of the marital property, including the contribution of the spouse as homemaker; provided, that the court shall consider the quality of the contribution as well as its factual existence . . . . "). Additionally, we note Husband seeks credit for his own

premarital investment in Tucapau. As reflected in its order, the family court "considered Husband's financial contributions to the marriage, including his nonmarital contributions" as well as both parties' indirect contributions to the marriage. We find no error in the court's analysis.

Likewise, the family court made no finding in the Original Order regarding the maintenance of Tucapau, and neither party appealed this. On remand, the family court found Wife was responsible for daily maintenance and upkeep on the residence for over fifteen years. We find no error in this finding.

Marital property is defined as "all real and personal property which has been acquired by the parties during the marriage and which is owned as of the date of filing or commencement of marital litigation." S.C. Code Ann. § 20-3-630 (2014). However, property acquired by either party prior to the marriage can be transmuted into marital property if: "(1) it becomes so commingled with marital property as to be untraceable; (2) it is jointly titled; or (3) it is utilized by the parties in support of the marriage or in some other manner so as to evidence an intent by the parties to make it marital property." *Greene v. Greene*, 351 S.C. 329, 338, 569 S.E.2d 393, 398 (Ct. App. 2002). Importantly, transmutation is a matter of intent to be gleaned from the facts of each case. *Id.* "The spouse claiming transmutation must produce objective evidence showing that, during the marriage, the parties themselves regarded the property as the common property of the marriage." *Johnson v. Johnson,* 296 S.C. 289, 295, 372 S.E.2d 107, 110–11 (Ct. App. 1988). "Such evidence may include placing the property in joint names, transferring the property to the other spouse as a gift, using the property exclusively for marital purposes, commingling the property with marital property, using marital funds to build equity in the property, or exchanging the property for marital property." *Id.* at 295, 372 S.E.2d at 111.

The family court made no finding in the Original Order addressing Husband's intention regarding his nonmarital interest in Tucapau. Husband specifically appealed the family court's finding that Tucapau was marital property, and this court stated "the family court *may* also consider Husband's contributions to acquiring the marital home in analyzing the equitable apportionment factors on remand." *McMillan*, 417 S.C. at 599 n.3, 790 S.E.2d at 225 n.3 (emphasis added). Husband presented evidence that, at the time of the marriage, his equity in the property was $76,027. Husband listed Tucapau on his marital assets addendum as marital property to be divided by the court, and he testified that when he titled this property solely in Wife's name, it was his understanding and intention that doing so would make it a marital asset. *See Pruitt v. Pruitt,* 389 S.C. 250, 261, 697 S.E.2d

702, 708 (Ct. App. 2010) ("Transmutation is a matter of intent to be gleaned from the facts of each case, and the spouse claiming transmutation 'must produce objective evidence showing that, during the marriage, the parties themselves regarded the property as the common property of the marriage.'" (quoting *Johnson,* 296 S.C. at 295, 372 S.E.2d at 110–11 (Ct. App. 1988))).  Thus, we agree with the family court's finding that Tucapau was transmuted into martial property.

## II.    Equitable Division

Husband argues the family court erred by failing to properly and equitably divide the parties' marital estate.  Relying on *Fredrickson v. Schulze*, 416 S.C. 141, 785 S.E.2d 392 (Ct. App 2016), he asserts that the marital estate of the parties should be divided such that Husband receives seventy percent of the value of the marital estate and Wife receives thirty percent.[4]  We disagree.

Here, the family court reanalyzed the relevant factors in determining an equitable apportionment on remand, and ultimately found the parties' marital property should be divided equally between them.  *See* § 20-3-620 (B).  We find no error in the family court's reanalysis of the assets and liabilities or in its consideration of the parties' respective contributions, direct and indirect, to the overall marital estate.

Additionally, of note is that both parties testified they wanted the court to divide their marital assets equally between them and felt it was fair to do so.  *See State v. Dunbar*, 356 S.C. 138, 142, 587 S.E.2d 691, 694 (2003) ("A party may not argue one ground at trial and an alternate ground on appeal."); *see also TNS Mills, Inc. v. S.C. Dep't of Revenue*, 331 S.C. 611, 617, 503 S.E.2d 471, 474 (1998) ("An issue conceded in a lower court may not be argued on appeal.").  We find the overall distribution is fair, evidence supports the family court's calculations, and a fifty-fifty distribution is what the parties testified they wanted during the underlying proceedings.

## III.    Interest

---

[4] In *Fredrickson,* this court held a seventy-thirty division of the marital estate was appropriate where one party contributed the vast majority of the income to acquire and grow the marital estate and that same party brought significant non-marital property into the marriage.  416 S.C. at 157, 785 S.E.2d at 401.  The facts of *Fredrickson* differ significantly from those of this case.

Husband argues the family court erred by applying interest to the division of the parties' assets where no fixed dollar amount was awarded to Wife and her portion of the estate was significantly reduced on appeal from $595,263.20 to $162,446.50. We disagree.

Citing *Casey v. Casey*, 311 S.C. 243, 245–46, 428 S.E.2d 714, 716 (2007), for the proposition that Husband should be required to pay post-judgment interest on fixed awards of money made as part of the equitable distribution of property, the family court found "it is fair and equitable for Husband to pay judgment interest on the sum of $162,446.50 owed to Wife in equitable distribution." The family court further stated, "Interest accrues if the ordered payments are not made, even if the other spouse appeals the amount of the award." *Dale v. Dale*, 341 S.C. 516, 534 S.E.2d 705 (Ct. App. 2000) (affirming an award of post-judgment interest to the wife although she unsuccessfully challenged on appeal the amount of cash her husband was required to pay pursuant to equitable distribution). Finally, the family court noted that in *Calhoun v. Calhoun*, our supreme court discussed a two-judgment situation similar to the case at bar. 339 S.C. 96, 103, 529 S.E.2d 14, 18 (2000). There, the court stated it "has never ruled on whether interest accrues during the pendency of an appeal when the appeal is made by the judgment creditor on the basis of a claim of inadequacy and the appeal is successful." *Id.* at 103, 529 S.E.2d at 18. The court explained, "The case before us is a perfect example of how complicated calculating post-judgment interest can become when a money judgment is modified at several different junctures before reaching finality and why a bright line rule for the accrual of interest needs to be established." *Id.* at 104, 529 S.E.2d at 19. The supreme court concluded:

> While different jurisdictions have come up with creative and complicated methods of resolving the issue, it appears that the simplest way to resolve it is by adopting a rule that when a money judgment is finalized, whether in a lower court or in an appellate court, the interest on that amount, whether it has been modified upward or downward or remains the same, runs from the date of the original judgment.

*Id.*

Here, Husband successfully appealed the equitable distribution and the amount awarded to Wife decreased significantly. Although Husband is correct that *Casey*, *Dale*, and *Calhoun* represent three factual circumstances distinct from this case in

that none of the parties ordered to pay interest in these cases were as successful on appeal as he has been, the law appears clear that post-judgment interest should accrue on the equitable distribution award to Wife. The monetary award of $595,263.20 was due to Wife as of June 5, 2014, per the Original Order filed March 11, 2014. Following the issuance of the amended order on remand on May 17, 2018, the monetary award was reduced to $162,446.50, plus post-judgment interest. Based on the rule set forth in *Calhoun*, and the correlation made in *Casey* between equitable distribution monetary awards and other monetary judgments, we find the family court correctly determined Wife is entitled to post-judgment interest at the statutorily prescribed post-judgment rate on the final equitable distribution figure of $162,446.50 and that this interest runs from June 5, 2014.[5]

**Conclusion**

For the foregoing reasons, the order of the family court is

**AFFIRMED AS MODIFIED.**

**MCDONALD and HEWITT, JJ., and LOCKEMY, A.J., concur.**

---

[5] Interest on the final award of attorney fees and costs would run from September 10, 2014, the date of the family court's fee order prior to Husband's initial appeal.